**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

| | |
|---|---|
| **W. PATRICK AERTKER, JR., ET AL.** | **CIVIL ACTION** |
| **VERSUS** | |
| **PLACID HOLDING COMPANY, ET AL.** | **NO. 07-0473-C-M2** |

**NOTICE**

    Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

    In accordance with 28 U.S.C. § 636(b)(1), you have ten (10) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein.  Failure to file written objections to the proposed findings, conclusions, and recommendations within 10 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

    ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

    Signed in chambers in Baton Rouge, Louisiana, July 23, 2008.

                                           **MAGISTRATE JUDGE CHRISTINE NOLAND**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

W. PATRICK AERTKER, JR., ET AL.          CIVIL ACTION

VERSUS

PLACID HOLDING COMPANY, ET Al.           NO. 07-0473-C-M2

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

This matter is before the Court on the defendants' Motion to Dismiss brought pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.  Rec.doc.no. 5.  Through this motion, the defendants seek to have this matter dismissed on the ground that (1) the claims of the plaintiffs herein do not meet the prerequisite jurisdictional amount so as to support subject matter jurisdiction in this case, and (2) the plaintiffs' claims are time-barred.  This motion is opposed.

**FACTUAL & PROCEDURAL BACKGROUND**

In 1936, W. Patrick Aertker, Sr., the plaintiffs' predecessor in interest, purchased a tract of land totaling approximately 550 acres and located in the Parish of LaSalle, State of Louisiana.  By 99-year lease executed in 1948, W. Patrick Aertker leased the timber and wood products on the subject property to Herbert N. Tannehill, who subsequently assigned the lease to the Louisiana-Pacific Corporation.

In September, 1981, the assignee/timber lessee of the subject property, the Louisiana-Pacific Corporation, granted a right of way

across the property to the defendants' predecessor in interest, the Placid Refining Company, L.L.C., for an 8-inch pipeline to be constructed and maintained on the property. According to the plaintiffs, no right of way for the subject pipeline was ever granted by them or their predecessors in interest to the defendants or the defendants' predecessors in interest. Notwithstanding, the pipeline was allegedly constructed and used to transport substantial quantities of crude oil across the plaintiffs' property between 1982 and 2000. In December, 2000, the defendants transferred the subject pipeline to the Central Louisiana Energy Pipleine Co., L.L.C. ("CLEPCO").[1]

Upon the deaths of W. Patrick Aertker, Sr., and his spouse, the ownership of the underlying property passed, through succession, to the decedents' children, the individual plaintiffs herein, W. Patrick Aertker, Jr., and Betty Aertker Harwood. In 1989, the individual plaintiffs partitioned the property and, by acts of transfer subsequently executed in 1996, transferred their respective interests in the subject property to the plaintiff corporations, Deniro, L.L.C., and Southern Interests, L.L.C., of which corporations the individual plaintiffs are managing members.

According to the Complaint, plaintiff W. Patrick Aertker, Jr., first learned of the existence of the above-referenced pipeline in October, 2002, when he visited the property, but assumed that the

---

[1] According to the plaintiffs, all claims against CLEPCO have been settled, reserving their rights against the defendants herein.

pipeline had pre-existed the purchase of the property by his father.  It was not until the Fall of 2005, according to the Complaint, that the plaintiffs discovered that no right of way agreement existed or had ever been granted for the subject pipeline.

The plaintiffs seek recovery from the defendants on two alternative theories of liability.  First, the plaintiffs assert that inasmuch as the pipeline was incorporated into their property, they became the owners thereof through the Louisiana law of accession as it relates to immoveable property in Louisiana.  In the alternative, the plaintiffs assert that the defendants have committed the continuing tort of trespass, for which tort the defendants are liable in damages.  Under either theory of liability, the plaintiffs contend that the defendants are liable for the fair rental value of the pipeline between 1982 and 2000, together with interest on rental obligations from the date rental payments were theoretically due.  The defendants contend in response that under the *St. Julien Doctrine*, codified at La. R.S. 19:14, the plaintiffs' recovery is limited to the fair market value of the right of way <u>at the time the pipeline was constructed</u>, an amount that does not meet the prerequisite jurisdictional amount for suit in federal court.  In the alternative, the defendants contend that the plaintiffs' claims are time-barred, having been asserted more than one year after the plaintiffs became aware of the presence of the offending pipeline on their property.

## **LAW & ANALYSIS**

Pursuant to 28 U.S.C. §1332, a federal district court has original jurisdiction over all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states. The defendants in this matter do not dispute that the parties are citizens of different states. Thus, the only issue with respect to a determination of diversity jurisdiction is the question of the amount in controversy.

Generally, the amount in controversy claimed by the plaintiffs to a lawsuit is controlling if the amount appears to be asserted in good faith. St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 289, 58 S.Ct. 586, 82 L.Ed.2d 845 (1938). In order for a federal court to decline jurisdiction under such circumstances, it must appear to a "legal certainty" that the claim is really for less than the jurisdictional amount. De Aguilar v. Boeing Co., 47 F.3d 1404 (5th Cir.), cert. denied, 516 U.S. 865, 116 S.Ct. 180, 133 L.Ed.2d 119 (1995). Given that the plaintiffs have alleged in their complaint that their claim exceeds the jurisdictional minimum, the defendants must meet the "legal certainty" test in order to have this matter dismissed for lack of jurisdiction.

Relying first upon the *St. Julien Doctrine*, the defendants contend that the plaintiffs' recovery is limited to only the fair market value of the right of way at the time of the construction of

the offending pipeline.[2]  Pursuant to this Doctrine, codified at La. R.S. 19:14, a landowner is deemed to have waived his right to receive prior compensation from a common carrier which, in good faith and with the acquiescence or consent of the owner, takes possession of and constructs facilities on privately owned immovable property for a public purpose.  This statute provides, in pertinent part:

> In the case where any corporation referred to in R.S. 19:2 has actually, in good faith believing it had the authority to do so, taken possession of privately owned immovable property of another and constructed facilities upon, under, or over such property with the consent or acquiescence of the owner of the property, it will be presumed that the owner of the property has waived his right to receive just compensation prior to the taking, and he shall be entitled only to bring an action for judicial determination of whether the taking was for a public and necessary purpose and for just compensation to be determined in accordance with R.S. 19:9, as of the time of the taking of the property, or right or interest therein ....

Relying upon this statute, the defendants contend that the plaintiffs' recovery is limited to the fair market value of the pipeline right of way, calculated as of the time of the defendants' taking.

In this Court's view, the *St. Julien Doctrine* has not been shown to apply in this case.  By its express terms, the application of the doctrine requires both a "good faith" belief by the encroaching utility that it had authority to construct facilities upon the land and the "consent or acquiescence of the owner of the

---

   [2]   There is no discussion relative to the monetary equivalent of such fair market value, but the plaintiffs do not appear to contest the defendants' assertion that this sum would not meet or exceed the federal jurisdictional limit of $75,000.

property" in the construction and maintenance of the facilities. In the instant case, the allegations of the Complaint clearly reflect that the pipeline company, prior to construction of the subject pipeline, was granted a right of way, not by the owner of the property but only by the timber lessee of the property. Pursuant to the allegations of the Complaint, a search of the public records would have disclosed the identity of the landowners and would have disclosed that the grantor of the defendants' right of way, the Louisiana-Pacific Corporation, was not such owner. The defendants do not suggest that the timber lease acquired by Louisiana-Pacific gave that company the authority to grant the subject right of way or could reasonably be interpreted as having done so.  Nor do the defendants contradict the plaintiffs' factual assertion that the landowners had little contact with the subject property and so did not learn of the existence of the pipeline until 2002, twenty (20) years after construction of the pipeline, thereby negating any suggestion that the plaintiffs consented to or acquiesced in its construction and maintenance.[3]

The defendants' reliance on Concha Chemical Pipeline v. Schwing, 835 So.2d 543 (La. App. 1st Cir. 2002), is misplaced.  In Concha, a pipeline company obtained a right of way to lay a pipeline over a large tract of land and, prior to doing so,

---

[3] While discovery and/or evidentiary development may disclose otherwise, a motion to dismiss pursuant to Rule 12 of the Federal Rules of Civil Procedure is disposed of on the pleadings alone, without consideration of extraneous evidentiary matters.

contacted the land manager who, in turn, obtained written consents from designated landowners. One of the persons granting such written consent executed the right of way as agent in fact for his three children, to whom he had transferred all but a very small part of his interest in the property. He neglected, however, to advise the pipeline company of his retained small interest, and litigation ensued when he thereafter sought to obtain additional compensation for the pipeline's servitude. In holding that the *St. Julien Doctrine* applied to the case, the court found that the evidence reflected the pipeline company to have been in good faith, it having contacted the land manager and obtained written assignments from the presumed landowners as was common practice in that area at that time. The court further found that the complaining landowner had in fact acquiesced in the granting of the right of way inasmuch as he had executed a document granting the right of way with full knowledge of the document's contents and without providing notice of his retained interest in the property. Accordingly, the Concha decision may easily be distinguished from the facts alleged in the instant case. Specifically, the defendants herein do not appear to have made any attempt to obtain the written consent of the owner of the land in obtaining the offending right of way, and the plaintiffs do not appear to have consented or acquiesced in the construction of the offending pipeline.

In contrast, the decision relied upon by the plaintiffs,

Bourgeois v. Louisiana State Gas Corp., 836 So.2d 693 (La. App. 5th Cir.), writ denied, 843 So.2d 407 (La. 2003), is more apposite. In Bourgeois, a pipeline company constructed a pipeline along a highway right of way which bordered the plaintiff's property. Although the company obtained appropriate consents and permits from government officials prior to construction, it did not seek or obtain the consent of the landowner. In holding that the *St. Julien Doctrine* did not limit the plaintiff's recovery, the court specifically relied upon the fact that, had the company checked the public records, it would have known that the plaintiff was the owner of the land over which the pipeline was built. The clear implication of this decision is that, in order to establish "good faith" under the statute, an encroaching pipeline company has at least some minimal obligation to seek to obtain consent from a landowner whose interest is easily ascertainable from the public records. See also Smith v. Louisiana Power & Light Company, Inc., 638 F.Supp. 361 (E.D. La. 1984) (*St. Julien Doctrine* did not apply where pipeline company failed to examine title and failed to contact landowner who was "easily available", and where it constructed pipeline erroneously assuming that it could use right of way believed to have been granted to city and parish). And having been alleged to have done no more than obtain a right of way from a non-owner timber lessee of the subject property in the instant case, it does not appear that the defendants may seek to invoke the benefits of the *St. Julien Doctrine*. Cf., South Central

Bell Telephone Company v. Eisman, 430 So.2d 256 (La. App. 5th Cir.), writ denied, 437 So.2d 1154 (La. 1983)(*St. Julien Doctrine* did not apply to limit wife's recovery where only co-owner husband consented to and granted right of way and where agent for company should have known of wife's interest).

The defendants next contend, in the alternative, that the plaintiffs' claims for the tort of trespass are barred by the one-year statute of limitations applicable to such actions.  In this regard, they assert, by reference to admissions in the Complaint, that the plaintiffs allege that they became aware of the existence of the pipeline in 2002 and failed to commence this proceeding until 2007.  They further point to Article 3492 of the Louisiana Civil Code which provides for a one-year limitations period for delictual actions such as trespass.  Notwithstanding, as noted by the plaintiffs, the plaintiffs have alleged that the trespass committed by the defendants meets the definition of a continuing tort for which the limitations period did not begin to run.

In Tujaque v. Atmos Energy Corporation, 442 F.Supp.2d 321 (E.D. La. 2006), the court addressed a claim by landowners of a trespass committed by a pipeline company which wrongfully constructed a pipeline across the landowner's property.  In rejecting a claim by the pipeline company that the landowner had failed to bring his action for trespass within the one-year limitations period after learning of the presence of the pipeline, the court found that the presence of the pipeline constituted a

continuing tort and that the limitations period did not begin to run until the offending pipeline was removed.  In arriving at this conclusion, the court relied upon Louisiana jurisprudence reaching the same result.  See <u>Terral v. Poole</u>, 484 So.2d 227 (La. App. 3rd Cir. 1986); <u>Joseph A. Neyrey, General Contractor, Inc. v. Louisiana Power & Light Company</u>, 347 So.2d 266 (La. App. 4th Cir.), <u>writ denied</u>, 350 So.2d 897 (La. 1977).  See also <u>Vial v. South Central Bell Telephone Company</u>, 423 So.2d 1233 (La. app. 5th Cir. 1982), <u>writ denied</u>, 432 So.2d 265 (La. 1983) ("continuing occupation of land belonging to the property owner constitutes a continuing trespass, and as such prescription is inapplicable." *St. Julien Doctrine* did not apply where "no serious effort was made" to determine parameters of right of way, and company performed work outside of right of way granted by the landowner).  Accordingly, in this Court's view, the plaintiff's claim has not been shown to be time-barred.

## RECOMMENDATION

It is recommended that the defendants' Motion to Dismiss, rec.doc.no. 5, be **DENIED**.

Signed in chambers in Baton Rouge, Louisiana, July 23, 2008.

_____
**MAGISTRATE JUDGE CHRISTINE NOLAND**