UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

W. PATRICK AERTKER, JR., ET AL.                    CIVIL ACTION

VERSUS

PLACID HOLDING COMPANY, ET AL.                     NO. 07-0473-RET-CN

<u>NOTICE</u>

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein.  Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in chambers in Baton Rouge, Louisiana, September 1, 2010.

_____

MAGISTRATE JUDGE CHRISTINE NOLAND

**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

W. PATRICK AERTKER, JR., ET AL.                          CIVIL ACTION

VERSUS

PLACID HOLDING COMPANY, ET AL.                          NO. 07-0473-RET-CN

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

This matter is before the Court on the defendants' Motion for Summary Judgment, brought pursuant to Rule 56 of the Federal Rules of Civil Procedure. Rec.doc.no. 24.[1] Through this motion, the defendants seek to have this matter dismissed on the grounds that (1) the plaintiffs' claims are barred by application of the doctrines of res judicata, collateral estoppel and/or acquisitive prescription, (2) the plaintiffs' claims are limited to compensation in an amount equal to a right-of-way or servitude of passage, valued as of 1981, in accordance with the *St. Julien Doctrine*, and (3), the plaintiffs' claims are barred by liberative prescription pursuant to articles 3492 and 3493 of the Louisiana Civil Code.  This motion is opposed.

The defendants move for summary judgment relying upon the pleadings, a Statement of Undisputed Facts, a timber lease dated December 22, 1948, from W. Patrick Aertker to Herbert N. Tannehill, a subsequent assignment of the timber lease, dated December 23, 1948, from Herbert N. Tannehill to the Urania Lumber Company, Ltd. (ancestor-in-title to the Louisiana-Pacific Corporation), a pipeline right-of-way grant dated September 16, 1981, from the Louisiana-Pacific Corporation to Placid Refining Company,

---

[1]     The defendants are Placid Holding Company, Placid Pipeline Company, L.L.C., Placid Refining Company, and Rosewood Refining Company, L.L.C., all of which are corporate successors and/or assignees of Placid Refining Company.

1

documents reflecting transfers of title in the subject pipeline and right-of-way through December 1, 2000, on which date the defendants purportedly transferred all of their right, title and interest in the subject pipeline and right-of-way to the Central Louisiana Energy Pipeline Company, L.L.C. ("CLEPCO"), excerpts from proceedings in the 28th Judicial District Court for the Parish of Lasalle, State of Louisiana, in Civil Action No. 35,205, <u>Deniro, L.L.C. and Southern Interests, L.L.C. v. Central Louisiana Energy Pipeline Co., L.L.C.</u>, excerpts from Title, <u>Louisiana Real Estate Transactions</u> (2d ed.), photographs depicting the appearance of the right-of-way property, and the deposition transcript of W. Patrick Aertker, Jr, taken on May 4, 2009.

Summary judgment is appropriate where there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Rule 56, Federal Rules of Civil Procedure. <u>Celotex Corporation v. Catrett</u>, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If the moving party carries its burden of proof under Rule 56(c), the opposing party must direct the Court's attention to specific evidence in the record which demonstrates that the non-moving party can satisfy a reasonable jury that it is entitled to a verdict in its favor. <u>Anderson</u>, <u>supra</u>; Rule 56(e). This burden is not satisfied by some metaphysical doubt as to alleged material facts, nor by conclusory allegations, unsubstantiated assertions, or a mere scintilla of evidence. <u>Little v. Liquid Air Corp.</u>, 37 F.3d 1069 (5th Cir. 1994). Rather, Rule 56 mandates that summary judgment be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. <u>Celotex</u>, <u>supra</u>. Summary judgment is

appropriate in any case where evidence is so weak or tenuous on essential facts that the evidence could not support a judgment in favor of the non-moving party.  <u>Little</u>, <u>supra</u>, 37 F.3d at 1076.  In resolving a motion for summary judgment, the Court must review the facts and inferences in the light most favorable to the non-moving party, and the Court may not evaluate the credibility of witnesses, weigh the evidence, or resolve factual disputes.  <u>International Shortstop, Inc. v. Rally's, Inc.</u>, 939 F.2d 1257 (5th Cir. 1994), <u>cert. denied</u>, 502 U.S. 1059, 112 S.Ct. 936, 117 L.Ed.2d 107 (1992).

## FACTUAL & PROCEDURAL BACKGROUND

In 1936, W. Patrick Aertker, Sr., the plaintiffs' ancestor-in-title, purchased a tract of land totaling approximately 550 acres and located in the Parish of LaSalle, State of Louisiana.  By 99-year lease executed in 1948, W. Patrick Aertker leased the timber and wood products on the subject property to Herbert N. Tannehill, who subsequently assigned his interest in the lease to the Urania Lumber Company, Ltd., which is the ancestor-in-title to the Louisiana-Pacific Corporation.

In September, 1981, the assignee/timber lessee of the subject property, the Louisiana-Pacific Corporation, for the consideration of $640.42, granted a right-of-way across the property to the defendants' ancestor-in-title, the Placid Refining Company, for an 8-inch pipeline to be constructed and maintained on the subject property.  According to the plaintiffs, the Louisiana-Pacific Corporation had no authority under the timber lease to grant the pipeline right-of-way to Placid, and the owner of the land, W. Patrick Aertker, Sr., never granted a right-of-way for the subject pipeline to Placid or to any other person. Notwithstanding, the pipeline was constructed in 1981 or 1982 and used

to transport substantial quantities of crude oil across the plaintiffs'
property between 1982 and 2000. In December, 2000, the defendants
transferred their interest in the subject pipeline and right-of-way to
the Central Louisiana Energy Pipeline Co., L.L.C. ("CLEPCO").[2]

Upon the deaths of W. Patrick Aertker, Sr., and his spouse, the
ownership of the underlying property passed, through succession, to the
decedents' children, the individual plaintiffs herein, W. Patrick
Aertker, Jr., and Betty Aertker Harwood. In 1989, the individual
plaintiffs partitioned the property and, by acts of transfer subsequently
executed in 1996, transferred their respective interests in the subject
property to the plaintiff corporations, Deniro, L.L.C., and Southern
Interests, L.L.C., of which corporations the individual plaintiffs are
managing members.

According to the deposition of plaintiff W. Patrick Aertker, Jr.,
he first learned of the existence of the above-referenced pipeline in
October, 2002, when he visited the property and saw the cleared pathway
and above-ground fixtures and signs. At that time, however, he was not
concerned about the right-of-way and simply assumed that his father had
granted the right-of-way or lease, that the right-of-way had preexisted
his father's purchase of the property, or that even he had granted the
right-of-way and had forgotten having done so. It was not until some
time in 2005, according to his deposition, that he discovered that no
valid right-of-way existed. Specifically, W. Patrick Aertker visited
Lasalle Parish in 2005 for the purpose of making sure that the timber
lessee had paid the taxes on the subject property in accordance with the

_____

[2]     All claims against CLEPCO have been settled, reserving the
plaintiffs' rights against the defendants herein.

terms of the timber lease.  Having some extra time, he decided to look into the public records and obtain a copy of the timber lease and, while doing so, he also thought to obtain a copy of the pipeline right-of-way agreement.  When he could not locate the latter document, he contacted his attorney and began to make inquiries about the pipeline.  It was in conducting these inquiries that the plaintiffs discovered that no right-of-way agreement existed or had ever been granted for the subject pipeline.

The plaintiffs seek recovery from the defendants on two alternative theories of liability.  First, the plaintiffs assert that inasmuch as the pipeline was incorporated into their immoveable property, they became the owners thereof through the Louisiana law of accession as it relates to immoveable property in Louisiana.  See Williams Land Co., L.L.C. v. Bellsouth Telecommunications, Inc., 2003 WL 21355472 (E.D. La., June 6, 2003).  In the alternative, the plaintiffs assert that the defendants have committed the continuing tort of trespass, for which tort the defendants are liable in damages.  In an earlier Report and Recommendation, approved by the District Judge on September 11, 2008, see rec.doc.nos. 14 and 15, the undersigned Magistrate Judge addressed a Motion to Dismiss filed by the defendants and concluded that the *St. Julien Doctrine*, codified at La. R.S. 19:14, pursuant to which the plaintiffs' recovery would be limited to the fair market value of the right-of-way at the time the pipeline was constructed, was inapplicable to the plaintiffs' claims and that, under the doctrine of continuing tort, the plaintiffs' claims had not been shown to be time-barred.

## LAW & ANALYSIS

Res Judicata/Collateral Estoppel

The defendants first contend that the plaintiffs' claims are barred by the doctrines of res judicata and/or collateral estoppel, pursuant to which, claims or issues which have been litigated to judgment between the parties to a proceeding in prior litigation are deemed to be final between the parties and, so, preclude re-litigation of the claims or issues in subsequent litigation between the parties or between persons in privity with the parties.  In making this assertion, the defendants point to an eviction proceeding commenced by the plaintiffs on June 30, 2006 against the defendants' successor-in-title, CLEPCO.  That proceeding resulted in a judgment entered against the plaintiffs and in favor of CLEPCO, supported by written reasons, finding that CLEPCO had obtained title to the subject pipeline right-of-way through the acquisitive prescription of ten years.  The plaintiffs, however, timely appealed that judgment, and during the pendency of the appeal, CLEPCO filed a separate civil action in state court, seeking to expropriate the subject pipeline right-of-way as a common carrier under state law.  While both the plaintiffs' appeal and the CLEPCO expropriation proceeding were pending, the parties entered into a settlement agreement, pursuant to which they agreed to a dismissal of both proceedings, "without prejudice", expressly reserving the plaintiffs' rights against all other persons, and with neither party admitting to "any fault or liability".  In accordance with this settlement, the pending appeal was remanded to the trial court upon a joint motion of the parties, "for the entry of such orders as the Trial Court may deem necessary to give effect to the compromise," Judgments were thereafter entered in both state court proceedings, on May 1, 2007, dismissing the proceedings "without prejudice".

6

In support of their argument that the judgment of the trial court is final and binding on the plaintiffs, the defendants cite only to La. R.S. 13:4231 (which generally defines res judicata under Louisiana law and requires (1) "a valid and final judgment", (2) the "same parties" and (3) the same "transaction or occurrence that is the subject matter of the litigation") and to decisions which recognize that res judicata and collateral estoppel may apply against persons who were not parties to the prior litigation where there is privity of interest between them. <u>Lastie v. Warden</u>, 611 So.2d 721 (La. App. 4th Cir.), <u>writ denied</u>, 614 So.2d 64 (La. 1992); <u>Louisiana Seafood Management v. Foster</u>, 46 F.Supp.2d 533 (E.D. La. 1999); <u>Vines v. University of Louisiana at Monroe</u>, 398 F.3d 700 (5th Cir. 2005), <u>cert. denied</u>, 546 U.S. 1089, 126 S.Ct. 1019, 163 L.Ed.2d 852 (2006); <u>Terrell v. DeConna</u>, 877 F.2d 1267 (5th Cir. 1989). The cases cited by the defendants, however, are not persuasive. <u>Lastie</u> dealt with the effect of a prior settlement on a successor-in-interest to an insolvent insurance company, and the court held that the successor was bound by the prior settlement because it "substitute[d] for the insolvent insurer" and essentially stepped into the shoes of its predecessor. The defendants in the instant case, however, are <u>predecessors</u>-in-interest who do not in any sense hold the same legal position. In <u>Louisiana Seafood</u>, the preclusive effect of a prior judgement was upheld against plaintiffs who brought a second suit and sought to avoid the preclusive effect by essentially naming different class representatives for the same putative class, a situation which is not presented in the instant case. And both <u>Vines</u> and <u>Terrell</u> address the preclusive effect which is given by a federal court to a prior <u>federal court</u> judgment, which situation is likewise not presented in the instant case. Accordingly, the assertion

by the Placid defendants that the plaintiffs should be bound by the prior state court judgment entered in favor of CLEPCO is not supported by the cited jurisprudence.

Further, the defendants do not address at all the essential question which seems to be presented by the procedural posture of this case, i.e., whether there was in fact a "valid and final judgment" in the state court for purposes of any preclusive effect whatever.  As pointed out by the plaintiffs, both of the state court lawsuits were ultimately dismissed "without prejudice", and as to the judgment entered against the plaintiffs, the plaintiffs contend that the judgment was never a "valid and final judgment", as required by the Louisiana res judicata statute, because an appeal was taken therefrom, rendering the judgment preliminary and without preclusive effect.

In support of their contention that the state court judgment was not a "valid and final judgment", the plaintiffs rely upon Dupre v. Floyd, 825 So.2d 1238 (La. App. 1st Cir. 2002), writs denied, 840 So.2d 646 (2003), which explicitly states that a judgment on appeal "is not a final judgment, which is needed as the basis of a res judicata claim." This statement, however, does not appear to be a correct statement of current Louisiana law.  An earlier decision of the Louisiana Supreme Court clearly suggests that a judgment is final for res judicata purposes between the parties to the action once it is rendered in the district court or intermediate appellate court, notwithstanding that the judgment may later be subject to modification on appeal.  See Tolis v. Board of Supervisors of Louisiana State University, 660 So.2d 1206 (La. 1995) (holding that an intermediate appellate court judgment was "a final judgment, which became res judicata and conclusive between the parties

8

when it was rendered, although subject to modification by a higher court on direct review."). This is consistent with decisions interpreting Louisiana law rendered in the federal arena which similarly find that a judgment entered in a state district court or intermediate appellate court is final between the parties, notwithstanding that it may be subject to modification upon subsequent review. See, Fidelity Standard Life Ins. Co. v. First Nat'l Bank & Trust Co. of Vidalia, Georgia, 510 F.2d 272 (5th Cir.), cert. denied, 423 U.S. 864, 96 S.Ct. 125, 46 L.Ed.2d 94 (1975) ("A case pending appeal is res judicata and entitled to full faith and credit unless and until reversed on appeal."). See also Energy Development Corp. v. St. Martin, 296 F.3d 356 (5th Cir. 2002), cert. denied, 538 U.S. 962, 123 S.Ct. 1763, 155 L.Ed.2d 514 (2003) (same, relying upon comment (d) to La. R.S. 13:4231, which provides that, "the preclusive effect of a judgment attaches once a final judgment has been signed by the trial court and would bar any action filed thereafter unless the judgment is reversed on appeal.") (Emphasis added); Rimkus Consulting Group, Inc. v. Cammarata, 688 F.Supp.2d 598 (S.D. Tex. 2010) ("Courts applying Louisiana law have rejected the argument that a pending appeal from a trial court's judgment defeats finality for preclusion purposes."); Shimon v. Sewerage & Water Bd. of new Orleans, 2006 WL 2088304 (E.D. La., July 25, 2006), affirmed, 565 F.3d 195 (5th Cir. 2009) ("[A] state court judgment is a 'final judgment' for res judicata purposes, despite pending appeals or other circumstances."); Maples v. LeBlanc, Maples & Waddell, L.L.C., 2003 WL 21467540 (E.D. La., June 20, 2003) (same). Accordingly, the Dupre decision is not good law, and the pendency of the appeal in the plaintiffs' state court lawsuit did not render the judgment of the trial court non-final for purposes of the

application of res judicata.

Notwithstanding the foregoing, and notwithstanding that there may once have existed "a valid and final judgment" against the plaintiffs in connection with the issues raised in this proceeding, the Court finds that that judgment ceased to have any potential res judicata effect when, based upon the settlement reached between the parties to that proceeding, the intermediate appellate court remanded the matter, and the trial court entered a second judgment dismissing the case "without prejudice".  The dismissal of the state court proceedings without prejudice "restores matters to the status occupied before the suit was filed and leaves the plaintiff free to bring another suit on the same cause of action. Although it terminates the pending litigation, the dismissal is without prejudice."  LeBlanc v. Travelers Indemnity Co., 263 So.2d 337 (La. 1972).  Such a dismissal "leaves the situation, as to that cause of action, as if no suit had ever been filed upon it." Id.  See also La. Code Civ. P. art. 1673, which provides that "[a] judgment of dismissal without prejudice shall not constitute a bar to another suit on the same cause of action."  Thus, the dismissal of the plaintiffs' state court proceedings "without prejudice" reversed any potential preclusive effect of the prior state court judgment and nullified any subsequent res judicata defense.  This is specifically recognized in La. R.S. 13:4232, which states that a judgment in a first action shall have no res judicata effect in a second action "when the judgment dismissed the first action without prejudice".  See also Anaya v. Legg Mason Wood Walker, Inc., 985 So.2d 281 (La. App. 4th Cir.), writs denied, 992 So.2d 1040 (La. 2008) (holding that a judgment entered in a Mexico district court had no res judicata effect once the judgment was thereafter overturned by a higher

court: "Hence, there is no final judgment in the Mexican proceedings and an exception of res judicata cannot be maintained in the instant matter because no final judgment exists ...."). Similarly in the instant case, the subsequent remand of the plaintiffs' appeal to the trial court and the entry of a second judgment dismissing the case "without prejudice", combined with the settlement agreement itself, which reserved the plaintiffs' rights against all other parties, mandates the conclusion that there is no res judicata or collateral estoppel effect which can result from the state trial court's prior determinations. In this regard, the plaintiffs are correct that under Louisiana law, a compromise and settlement agreement has, as between the parties, the effect of the thing adjudged and can itself constitute the basis for a plea of res judicata as between them. See Ewing v. Aubert, 532 So.2d 882 (La. App. 1st Cir. 1988), affirmed, 558 So.2d 234 (La. 1990); Higgins v. State Department of health & Human Resources, 451 So.2d 142 (La. App. 1st Cir.), affirmed on rehearing, 458 So.2d 951 (La. App. 1st Cir.), writ denied, 460 So.2d 607 (La. 1984). Accordingly, the defendants' contention that the plaintiffs' claims are barred by the doctrines of res judicata and/or collateral estoppel must be rejected.

<u>Acquisitive Prescription</u>

The defendants next contend that they have obtained title to the subject pipeline right-of-way through the doctrine of good faith acquisitive prescription, pursuant to which a person may acquire ownership in fact of immoveable property, notwithstanding that the title through which he obtained such ownership was not valid at its inception, if he, in good faith, with a title which purported to grant ownership of the subject property, possessed the property openly thereafter for an

11

uninterrupted period of ten (10) years.  <u>See</u> former Civil Code arts. 3478, <u>et seq.</u>  At the time of the purported grant of the pipeline right-of-way from the Louisiana-Pacific Corporation to Placid Refining Company, article 3479 provided:

> To acquire the ownership of immovables by the species of prescription which forms the subject of the present paragraph, four conditions must concur:
>
> 1.  Good faith on the part of the possessor.
>
> 2.  A title which shall be legal, and sufficient to transfer the property.
>
> 3.  Possession during the time required by law which possession must be accompanied by the incidents hereafter required.
>
> 4.  Finally, an object which may be acquired by prescription.

There is no serious question in this case as to the third and fourth elements of good faith acquisitive prescription, above.  Specifically, it appears clear that the subject pipeline right-of-way is an object which may be acquired by prescription and that the defendants, collectively, possessed the right-of-way for more than ten (10) years, openly and obviously, with a maintained pathway approximately 1.2 miles long and 45 feet wide, cleared of timber, with above-ground valves, and with signage indicating the presence of the underground pipeline. Rather, the resolution of this issue will depend upon resolution of the question whether, at the inception of the defendants' possession, Placid Refining Company was in good faith and had a title which was "legal, and sufficient to transfer the property," sometimes referred to as the requirement of "just title".

Initially, with regard to the question of whether Placid Refining Company obtained "just title" to the pipeline right-of-way, the Court

must ultimately conclude that the contract between the Louisiana-Pacific Corporation and Placid Refining Company in September, 1981, was sufficient to satisfy this requirement. <u>See</u> former Civil Code art. 3485 (requiring "a title which by its nature, would have been sufficient to transfer the ownership of the property, provided it had been derived from the real owners"); and former Civil Code art. 3486 (mandating "[t]hat the title be valid in point of form"). The document which purports to transfer the pipeline right-of-way from the Louisiana-Pacific Corporation to Placid Refining Company is termed a "Right-of-way Grant", and purports to formally grant to the Placid Refining Company a right-of-way through the described property for the purpose of constructing and maintaining an underground pipeline across the property. The document has been executed by the Louisiana-Pacific Corporation through the signature of a person purporting to be the "General Manager" of the Corporation, James Eisses, and his signature is purportedly witnessed by two persons who have appended their signatures to the document. Although the contract does not appear to be in true authentic form - because the notarial certification only authenticates a statement made by one of the witnesses to the contract and does not attest to the notary's presence at the time of signing – Louisiana law does not require a notarial act in order to effect a transfer of immovable property and authorizes such a transfer through an act made under private signature. Accordingly, the document appears valid on its face to effect a transfer of the subject property.

Notwithstanding the seeming validity of the subject document, the plaintiffs contend that the referenced contract does not constitute "just title" because the document does not contain any signification that James Eisses, who signed the document as the "General Manager" of the

13

Louisiana-Pacific Corporation, was authorized by written authority of the board of directors of the corporation to act on its behalf relative to immovable property, which written authorization is a requirement of Louisiana law.  This deficiency, however, does not render the document itself invalid.   The Court reaches this conclusion because, if the Louisiana-Pacific Corporation had in fact been the owner of the land and if James Eisses had in fact been properly authorized to act on behalf of the corporation, then the document granting the right-of-way certainly would have been sufficient to transfer the subject property, notwithstanding that these facts were not stated in the document.  See Bolding v. Eason Oil Company, 178 So.2d 246 (La. 1965) (recognizing that a sale of immoveable property by a corporation which does not signify that the corporate agent is authorized to act on behalf of the corporation is only a relative nullity, subject to ratification or renunciation by the corporation, but is otherwise valid if the agent had written authority in fact or if the transaction were thereafter ratified).  Accordingly, this deficiency in the subject contract is not sufficient to support a finding of an absence of "just title".

Turning to the issue of good faith, which is a separate and distinct requirement of acquisitive prescription, a more difficult question is presented.  At the time that Placid Refining Company negotiated with Louisiana-Pacific Corporation for the pipeline right-of-way, Civil Code article 3451 provided:

> The possessor in good faith is he who has just reason to believe himself the master of the thing which he possesses, although he may not be in fact; as happens to him who buys a thing which he supposes to belong to the person selling it to him, but which, in fact, belongs to another.

And article 3452 provided that:

14

> The possessor in bad faith is he who possesses as master, but who assumes this quality, when he well knows that he has no title to the thing, or that his title is vicious and defective.

While some earlier decisions predicated a finding of good faith on the possessor's subjective belief in his ownership, the prevailing jurisprudence, now codified in new Civil Code article 3480, is that good faith is to be determined in light of objective considerations.  See Phillips v. Parker, 483 So.2d 972 (La. 1986).  In addition, article 3481 provided, at the time of the 1981 transaction, that:

> Good faith is always presumed in matters of prescription; and he who alleges bad faith in the possessor, must prove it.

Prior to the 1983 amendments to the Civil Code articles on prescription, it was held that while an error of fact would not defeat the claim of a good faith possessor, an error of law was sufficient to negate a claim of good faith.  See Thibodeaux v. Quebodeaux, 282 So.2d 845 (La. App. 3d Cir. 1973) ("Our law is settled that regardless of the moral good faith of the purchaser, if he purchased under an error of law, he was thereby in legal bad faith, and prescription of ten years ... was not available to him.").  Further, although a purchaser was not then legally obligated, and is not now, to check the public records in order to maintain a plea of good faith, it appears that a failure to check the public records can be one factor which goes toward rebuttal of the presumption of good faith.  Phillips v. Parker, supra, at note 7 (recognizing that "it is imprudent in modern practice to purchase property without a title examination", and that the obtaining of a title examination "may be a factor to be considered in the determination of good faith.").  As further stated in Phillips, supra:

> [K]nowledge by a purchaser of title defects can be inferred from circumstances more relevant than the mere obtaining of a title

15

examination.  For example, a purchase by quit claim deed or at an extremely low price may be suggestive (but not conclusive) of knowledge of title defects which may rebut the presumed good faith of the purchaser.  The age and nature of the title defect, and other such factors bearing on the likelihood of discovery, are also relevant to the determination.

Also pertinent to the issue of good faith is the rule that a purchaser who has been given a reason to question the ownership interest of the seller then has the burden to undertake a reasonable investigation or be precluded from asserting his good faith.  <u>Thibodeaux v. Quebodeaux</u>, <u>supra</u>:

> [N]otice of facts which ought to excite inquiry and which if pursued would lead to knowledge of other facts operates as notice thereof. Where one who has had sufficient knowledge of the facts to put him on inquiry and fails to inquire, or one who has had cause to inquire and fails to avail himself of the means and facilities at hand to inform himself of the true facts, is chargeable with all the facts which by a proper inquiry he might have ascertained.

It has been held that those facts which will be seen to compel a duty on the part of the purchaser to conduct further investigation are "facts which would lead an ordinarily prudent man to make an examination," <u>Dinwiddie v. Cox</u>, 9 So.2d 68 (La. App. 2d Cir. 1942), or more recently, "a man of ordinary business experience", <u>Board of Commissioners of Caddo Levee District v. S.D. Hunter Foundation</u>, 354 So.2d 156 (La. 1977).  <u>See also</u> former Civil Code art. 3484 (defining "just title" to be "title which the possessor may have received from any person whom he <u>honestly believed</u> to be the real owner." (emphasis added)).

Based upon the foregoing recitation of legal principles, and considering the evidence now before it, the Court finds that there are questions of fact which preclude the grant of summary judgment on the issue of good faith.  In the first place, there is no assertion whatever in the record that the Placid Refining Company in fact "honestly

16

believed" in 1981 that it was obtaining a good and valid title to the subject pipeline right-of-way from the Louisiana-Pacific Corporation. Further, although the Placid Refining Company was not legally required to undertake a search of the public records in order to make a claim of good faith, there is no indication in the record as to whether Placid did or did not undertake such a search, which search would likely have operated to negate the defendants' claim of good faith. Finally, in the Court's view, the deed itself, pursuant to which Placid purportedly obtained the subject pipeline right-of-way, raises a substantial question which would arouse, in an ordinarily prudent man or in a man of ordinary business experience, a sufficient doubt as to the validity of the transfer as to warrant additional inquiry. Specifically, as noted above, the deed contains no statement that the Louisiana-Pacific Corporation is the owner of the property or otherwise has the authority to enter into the contract. There is no warranty of title and no statement as to the historical basis of Louisiana-Pacific's ownership. And more importantly, the deed appears on its face to be potentially subject to an action for nullification inasmuch as there is no assertion therein relative to the authority of James Eisses, the "General Manager" of the Louisiana-Pacific Corporation, to alienate the immoveable property of the corporation. As a result of this glaring deficiency, and in the event that James Eisses did not in fact have full written authority from his principal, Placid faced a potential action for nullification of the agreement within five or ten years thereafter under Louisiana law. The case of <u>Fried v. Bradley</u>, 52 So.2d 247 (La. 1950), is instructive on this point. In <u>Fried</u>, purchasers of immoveable property sought to claim the benefit of 10-year acquisitive prescription based upon a deed of purchase indicating

merely that the sellers were the executors of an estate, acting in their capacity as such, without any recitation that they had complied with the legal requirements of registering the testament or obtaining a judicial order for execution thereof.  The court found that the deed, because of the executors' failure to comply with the procedural formalities of state law for the sale of the succession property, was a nullity.  Further, the court found that, because of the clause in the deed of purchase, reciting that the property was being sold by the executors of the estate, without any indication that the formalities of law had been complied with,

> the deed will not support a plea of prescription of ten years acquirendi causa .... [W]hile it may be said ... that Bradley was in moral good faith in acquiring and taking possession of the property, he was nevertheless in legal bad faith, since he was placed on inquiry as to the status of the property being conveyed to him by the inclusion in the deed of the clause above referred to.

Specifically, the absence of any indication in the contract that the sellers were legally authorized to undertake the sale was sufficient to place the purchaser "on inquiry as to the status of the property being conveyed."  In the absence of such further inquiry in <u>Fried</u>, this deficiency was sufficient to eliminate the purchasers' claim of good faith.  Similarly in the instant case, the fact that the transaction between the Louisiana-Pacific Corporation and Placid Refining Company was a transaction between corporations and involving immoveable property, and the absence in the contract of any indication that James Eisses was legally authorized to undertake such a transaction, should have raised a question and placed Placid Refining Company "on inquiry", standing in the shoes of an ordinarily prudent man or a man of ordinary business experience, as to the validity of the transaction so as to warrant further inquiry.

18

In the written reasons for judgment in the state court proceedings, the trial judge distinguished <u>Fried</u> on the basis that the transaction in <u>Fried</u> was an absolute nullity whereas the transaction in the instant case, a sale of property by a corporate agent without apparent written authority from the board of directors, is only a relative nullity.  In this Court's view, this is a distinction without a difference, and moreover, the defendants' argument in this regard overlooks a central component of this case.  The courts of Louisiana have often distinguished between "absolute nullities in derogation of public order and good morals and those which are established in the interest of individuals." <u>Whitney Nat. Bank of New Orleans v. Schwob</u>, 13 So.2d 782 (La. 1951).  In the latter situation, as with relatively null transactions, the courts have allowed deficient contracts to be later ratified or confirmed by the parties.  This distinction has been incorporated into Civil Code articles 2030 and 2031, which provide, respectively, that "[a] contract is absolutely null when it violates a rule of public order, as when the object of a contract is illicit or immoral ... [and] may never be confirmed"; and "[a] contract is relatively null when it violates a rule intended for the protection of private parties ... [and] may be confirmed."  In <u>Fried</u>, whereas the Louisiana Supreme Court made note of the fact that the lower court had found the transaction in that case to be an absolute nullity, <u>cf.</u>, <u>Hessick v. Petro Publications, Inc.</u>, 684 So.2d 466 (La. App. 1st Cir. 1996), <u>writ denied</u>, 691 So.2d 89 (La. 1997) (holding that a sale of succession property without judicial approval is a relative nullity), the Court further concluded that, since the formal requirements for a sale of succession property were for the protection of individuals, the transaction was subject to later ratification and had

19

in fact been ratified.   In the instant case, similarly, a sale of immoveable property by an unauthorized corporate representative may later be ratified by the corporation.   As such, this Court sees no real distinction between this case and the situation presented in Fried. Further, and more importantly, the situation presented in this case is not merely that of a transaction involving a corporate agent who may not have been authorized by the corporation, subject to later ratification, but instead, is that of a transaction whereby the corporate agent sought to transfer title to property which the corporation did not own.   In this regard, it has often been stated in Louisiana that "the sale of the property of another is an absolute nullity."   See, e.g., Quintana Petroleum Corp. v. Alpha Investments Corp., 435 So.2d 1092 (La. App. 1st Cir. 1983).   See also Whitman v. Whitman, 18 So.2d 633 (La. 1944) ("[A] sale of property belonging to someone other than the seller is [absolutely] null."); Alexander v. Gusman, 16 La.Ann. 251 (La. 1861) ("The property, then, never belonged to Abraham Stotts ... and the subsequent sale of it ... was an absolute nullity, being the sale of another's property."); Civil Code art. 2452 ("The sale of a thing belonging to another does not convey ownership.").   Accordingly, the situation presented in the instant case is far more similar to that presented in Fried, and this Court finds Fried to be controlling.

It is recognized as "imprudent in modern practice to purchase property without a title examination".   See Phillips v. Parker, 483 So.2d 972 (La. 1986).   And although a person is not required to conduct such a search in order to claim good faith, it is also not reasonable to believe that a corporation with "ordinary business experience" would enter into a contract which, on its face, carried the potential for an

20

action of nullity.  Accordingly, this Court believes that Placid Refining Company was placed on sufficient inquiry to rebut the presumption of good faith and to place upon it an obligation to conduct further inquiry.  And no party has suggested that such further inquiry, in the form of a search of the public records, would not have disclosed the complete absence of authority on the part of the Louisiana-Pacific Corporation, or its agent, to alienate the subject property.  The Court further notes that all subsequent transactions involving the pipeline right-of-way, reflected in exhibits attached to the defendants' motion for summary judgment, have included explicit information regarding the actual authority of the agents signing on behalf of the respective corporations.  While "[t]he purpose of acquisitive prescription is to assure certainty and stability to the title of an innocent person in a normal sales transaction.... [t]he good faith requirement ... is met only when the buyer reasonably and legitimately believes that his seller is then the true owner." Board of Commissioners for the Lafourche Basin Levee District v. Elmer, 268 So.2d 274 (La. App. 4th Cir.), writ denied, 268 So.2d 675 (1972). Although "[a] person is allowed to rely Blindly on an apparently valid title from the apparent owner .... he is not blind who Will not see." Id.

### *St. Julien Doctrine*

Relying next upon the *St. Julien Doctrine*, the defendants contend that they have obtained actual ownership of the subject pipeline right-of-way through "appropriation" or "inverse expropriation". See St. Julien v. Morgan Louisiana & Texas Railroad Co, 35 La.Ann. 924 (1883). Under the *St. Julien Doctrine*, now codified at La. R.S. 19:14, a landowner is deemed to have waived his right to receive prior

21

compensation from a "common carrier", through a properly-filed expropriation proceeding, if the "common carrier" has, in good faith and with the consent or acquiescence of the owner, taken possession of and constructed facilities on privately owned immovable property for a public purpose.  This statute provides, in pertinent part:

> In the case where any corporation referred to in R.S. 19:2 has actually, in good faith believing it had the authority to do so, taken possession of privately owned immovable property of another and constructed facilities upon, under, or over such property with the consent or acquiescence of the owner of the property, it will be presumed that the owner of the property has waived his right to receive just compensation prior to the taking, and he shall be entitled only to bring an action for judicial determination of whether the taking was for a public and necessary purpose and for just compensation to be determined in accordance with R.S. 19:9, as of the time of the taking of the property, or right or interest therein ....

In such instance, if the taking was in fact for a public and necessary purpose, the encroaching entity is deemed to have acquired an ownership interest in the servitude, and the owners of the land are thereafter limited to recovery of the fair market value of the servitude, calculated as of the time of the taking, together with severance damages.

In this Court's view, the *St. Julien Doctrine* has not been shown to be applicable in this case.  By the express terms of the statute, the application of the doctrine requires both (1) a "good faith" belief by the encroaching company that it had authority to construct facilities upon the land and (2) the "consent or acquiescence of the owner of the property" in the construction of the facilities.  In the instant case, it is undisputed that, prior to construction of the pipeline, Placid Refining Company was granted a right-of-way, not by the owner of the property but only by the timber lessee thereof.  The defendants do not suggest that the Louisiana-Pacific Corporation in fact had the authority,

by virtue of its timber lease, to grant the pipeline right-of-way, or that the timber lease could reasonably be interpreted as having conferred such authority. Nor do the defendants contradict the plaintiffs' factual assertion that the landowners had little contact with the subject property and so did not learn of the existence of the pipeline until 2002, twenty (20) years after construction of the pipeline, thereby negating any suggestion that the plaintiffs consented to or acquiesced in its construction. Rather, the defendants assert that they were in good faith when they entered upon the subject property and that the plaintiffs' failure to object for more than twenty years is adequate to show the plaintiffs' acquiescence or consent to the facilities.

This Court need not decide whether the good faith requirement imposed by La. R.S. 19:14 is the same as that required for good faith acquisitive prescription under the Louisiana Civil Code, but the Court does note several decisions which rejected the application of the *St. Julien Doctrine* for the reason, at least in part, that good faith was not present where the interest of the landowner was easily ascertainable upon a search of the public records, and no such search was made. <u>Bourgeois v. Louisiana State Gas Corp.</u>, 836 So.2d 693 (La. App. 5th Cir.), <u>writ denied</u>, 843 So.2d 407 (La. 2003) (finding that the *St. Julien Doctrine* did not apply and that a pipeline company was not in good faith where "[h]ad LSGC properly checked the public records, it would have known that Bourgeois owned the property ...."); <u>Smith v. Louisiana Power & Light Company, Inc.</u>, 638 F.Supp. 361 (E.D. La. 1984) (finding that the *St. Julien Doctrine* did not apply where a pipeline company failed to examine title and failed to contact the landowner who was "easily available"). Instead, the Court concludes that the doctrine is not applicable in the

instant case because there was no consent or acquiescence of the landowner <u>at the time of construction</u> of the offending structures built by the Placid Refining Company upon the landowner's property.  Virtually all of the decisions which have addressed this aspect of the *St. Julien Doctrine* have focused upon the actual knowledge of the landowner at the time of construction of the encroaching structures.  <u>See</u>, <u>e.g.</u>, <u>Louisiana Power & Light Co. v. Holmes</u>, 422 So.2d 684 (La. App. 3d Cir.), <u>writ denied</u>, 422 So.2d 684 (La. 1982) (noting that, for application of *St. Julien Doctrine*, "plaintiff had to prove ... that the owner of the land, <u>at the time the electric lines were constructed</u>, either consented to the construction or acquiesced in it.")(emphasis added); <u>Howard v. Louisiana Power & Light Co.</u>, 583 So.2d 503 (La. App. 5th Cir. 1991) (holding that, for the *St. Julien Doctrine* to apply, "it was necessary that the landowner <u>had knowledge of the construction</u> and consented to it or acquiesced in it")(emphasis added);  <u>Bourgeois v. Louisiana State Gas Corp.</u>, 836 So.2d 693 (La. App. 5th Cir.), <u>writ denied</u>, 843 So.2d 407 (La. 2003) (holding that the *St. Julien Doctrine* did not apply and that the landowner had not acquiesced where he protested the construction prior to the commencement thereof);  <u>Holt v. City of Bossier City</u>, 384 So.2d 495 (La. App. 2d Cir. 1980) (holding that the *St. Julien Doctrine* applied where the landowner acquiesced because she "knew of the construction and made no protest ....");  <u>Istre v. South Central Bell Tel. Co.</u>, 329 So.2d 486 (La. App. 3d Cir.), <u>writ denied</u>, 333 So.2d 233 (La. 1976) (holding that the *St. Julien Doctrine* applied due to the acquiescence of landowners where evidence was presented that they were aware of the construction when it occurred yet failed to make a demand against the encroaching company for 3 or 4 months thereafter; the court implicitly

24

recognized, however, that the doctrine would not have applied in the absence of such knowledge because, "[t]here can be no acquiescence by the landowner, of course, unless he had knowledge of the taking."); <u>Koch v. Louisiana Power & Light Co.</u>, 298 So.2d 124 (La. App. 1st Cir.), <u>writ denied</u>, 302 So.2d 17 (La. 1974) (holding that the *St. Julien Doctrine* did not apply where the landowners did not acquiesce because they "made their opposition known ... on numerous occasions prior to and during the construction."); <u>Veillon v. Columbia Gulf Transmission Co.</u>, 192 So.2d 646 (La. App. 3d Cir. 1966), <u>writ denied</u>, 195 So.2d 143 (La. 1967) (finding that the *St. Julien Doctrine* applied due to the landowner's acquiescence where, after he rejected an initial offer for the purchase of a right-of-way, he thereafter failed to object while the pipeline was being constructed on his property, and "he was on the construction scene daily"). <u>See also</u> <u>Girouard v. Louviere</u>, 361 So.2d 1306 (La. App. 1st Cir. 1978) (stating, in <u>dicta</u>, that "the *St. Julien Doctrine* ... covers those cases in which a landowner ... knowingly permits major construction to take place on his property without taking action to prevent it."); <u>Harrison v. Louisiana Power & Light Co.</u>, 288 So.2d 1974 (La. 1974) (finding no acquiescence in landowners to power lines and poles which encroached on their property where they had refused to grant servitudes prior to construction, notwithstanding an 11-month delay after construction before landowners filed suit).

The defendants' reliance on <u>Concha Chemical Pipeline v. Schwing</u>, 835 So.2d 543 (La. App. 1st Cir. 2002), is misplaced. In <u>Concha</u>, a pipeline company obtained <u>contractual</u> rights of way to lay a pipeline over a large tract of land and, prior to doing so, contacted the land manager of the property who, in turn, obtained written consents from designated

25

landowners.  One of the persons granting such written consent executed the right-of-way as agent in fact for his three children, to whom he had transferred all but a very small part of his interest in the property. He neglected, however, to advise the pipeline company of his retained small interest, and litigation ensued when he thereafter sought to obtain additional compensation for the pipeline servitude.  In holding that the *St. Julien Doctrine* applied in that case, the court found that the evidence reflected the pipeline company to have been in good faith, it having contacted the land manager and obtained written assignments from the presumed landowners as was common practice in that area at that time. The court further found that the complaining landowner had in fact acquiesced in the granting of the right-of-way inasmuch as he had executed a document granting the right-of-way with full knowledge of the document's contents and without providing notice of his retained interest in the property.  Accordingly, the <u>Concha</u> decision may easily be distinguished from the facts alleged in the instant case, where the plaintiffs' ancestor-in-title was apparently completely unaware of the construction of the subject pipeline, both at the time of construction and for more than twenty years thereafter, and so never consented to or acquiesced in such construction.

Upon a finding that there was clearly no acquiescence or consent by the landowner to the taking of the pipeline right-of-way or the construction of the pipeline by Placid Refining Company in 1981 and 1982, there can be no application of the *St. Julien Doctrine* to the plaintiffs' claims herein.

<u>Liberative Prescription</u>

Finally, the defendants contend that the plaintiffs' claims for the

26

tort of trespass are barred by the one-year statute of limitations applicable to such actions.  In this regard, they assert, by reference to the deposition testimony of Patrick Aertker, that the plaintiffs became aware of the existence of the pipeline in 2002 yet failed to commence this proceeding until 2007.  They further point to Article 3492 of the Louisiana Civil Code (enacted in 1983, previously Civil Code article 3536) which provides for a one-year limitations period for delictual actions such as trespass.  In response to these contentions, the plaintiffs assert that the trespass committed by the defendants meets the definition of a continuing tort, for which the limitations period did not begin to run until the offending pipeline was removed from the property or the offending nature of the pipeline ceased by virtue of the plaintiffs' grant of a pipeline right-of-way to CLEPCO in 2007.[3]

---

[3]     There are several limitations periods which might potentially be argued to apply to the plaintiffs' claims, but the parties have not addressed the pertinent statutory provisions. Initially, the Court notes that La. R.S. 13:5111 provides for a three-year limitations period for "actions for compensation for property taken by the state, a parish, municipality, or other political subdivision or any one of their respective agencies".  The Court concludes that this provision is not applicable to the plaintiffs' claims because, by its terms, this statute applies only to a state or political subdivision.  Although the defendants herein, Placid Refining Company, et al., are "common carriers" which are granted a certain quasi-public status because of the public benefit associated with their activities, they do not stand in the same shoes as "the state ... or other political subdivision".  See Cooper v. Louisiana Dept. of Public Works, 870 So.2d 315 (La. App. 3d Cir.), writ denied, 885 So.2d 1138 (La. 2004) (finding La. R.S. 13:5111 inapplicable to a claim where a federal entity, rather than a state entity, performed the work complained of by the plaintiffs).

The Court next looks to La. R.S. 19:2.1, which provides for a two-year limitations period for "[a]ll claims for property by, or for damages to the owner caused by the expropriation of property", with this limitation period commencing "on the date on which the property was actually occupied and used for the purposes of the expropriation." Although this statute appears in the same Title of the Louisiana Revised Statutes as the statutory enactment of the St. Julien Doctrine, La. R.S. 19:14, discussed supra, the Louisiana courts have

27

In Tujague v. Atmos Energy Corporation, 442 F.Supp.2d 321 (E.D. La. 2006), the court addressed a claim by landowners of a trespass committed by a pipeline company which wrongfully constructed a pipeline across the landowner's property.  In rejecting a claim by the pipeline company that the landowner had failed to bring his action for trespass within the one-year limitations period after learning of the presence of the pipeline, the court found that the presence of the pipeline constituted a continuing tort and that the limitations period did not begin to run until the offending pipeline was removed.  In arriving at this conclusion, the court relied upon Louisiana jurisprudence reaching the same result.  See Terral v. Poole, 484 So.2d 227 (La. App. 3rd Cir. 1986) (holding that the continuing tort doctrine applied where a neighbor buried a sewer line and left debris on property belonging to the plaintiff); Joseph A. Neyrey, General Contractor, Inc. v. Louisiana Power & Light Company, 347 So.2d 266 (La. App. 4th Cir.), writ denied, 350 So.2d 897 (La. 1977) (holding that the continuing tort doctrine applied where a trespassing utility company installed a utility pole and transmission line across the plaintiff's property: "[A] trespass committed by

---

made clear that this two-year limitations period is only applicable to claims asserted under the formal expropriation procedure and has no application to claims relative to property which has been informally taken by virtue of the St. Julien Doctrine.  Jungeblut v. Jefferson Parish, City of Kenner, 485 So.2d 974 (La. App. 5th cir. 1986). Accordingly, this statute can have no application to the plaintiffs' claims.

Finally, the Court looks to La. R.S. 9:5624, which provided, at the time that the defendants entered onto the plaintiffs' property, that "[w]hen private property is damaged for public purposes any and all actions for such damages are prescribed by the prescription of two years, which shall begin to run when the damages are sustained."  This statute, likewise, has been held to be inapplicable to a claim similar to that asserted herein.  Olivier v. Louisiana Gas Service Co., 551 So.2d 67 (La. App. 5th Cir. 1989).

illegally erecting a structure on immovable property continues as long as the offending object remains on the premises, and the trespass is terminated only by the removal of the object wrongfully placed there"); Vial v. South Central Bell Telephone Company, 423 So.2d 1233 (La. app. 5th Cir. 1982), writ denied, 432 So.2d 265 (La. 1983) (holding, as to underground conduits, cables and manholes constructed on the plaintiff's property, that "continuing occupation of land belonging to the property owner constitutes a continuing trespass, and as such prescription is inapplicable.).  See also Estate of Patout v. City of New Iberia, 708 So.2d 526 (La. App. 3d Cir. 1998), affirmed, 738 So.2d 544 (La. 1999) (holding that the continuing tort doctrine applied to garbage which was pushed onto the plaintiff's property and had not been removed); Dore v. Jefferson Guar. Bank, 543 So.2d 560 (La. App. 4th Cir. 1989) (same relative to debris place on the plaintiff's property by the adjoining landowner).  The Court further notes that this conclusion is consistent with the rule of law stated in a learned treatise on this subject:

> The ordinary trespass is complete when it is committed; the cause of action accrues, and the statute of limitations begins to run at time, although the consequence may be a permanent injury to the land.  But in many cases, as where the defendant erects a structure or dumps rubbish on the land of the plaintiff, the invasion is continued by a failure to remove it.  In such a case, there is a continuing wrong so long as the offending object remains.

W. Page Keaton, et al., Prosser and Keaton on the Law of Torts, § 13 at p. 83 (5th ed. 1984).  Accordingly, in this Court's view, in light of the continuing tort doctrine, and in light of the continued presence of the offending pipeline on the plaintiffs' property through 2007, at which time, as a result of the plaintiffs' settlement and grant of a right-of-way to CLEPCO, the offending nature of the pipeline ceased, the plaintiffs' claims have not been shown to be time-barred.

In seeking to distinguish the above line of cases, the defendants point only to Crump v. Sabine River Authority, 737 So.2d 720 (La. 1999), where the Louisiana Supreme Court failed to find a continuing tort where a canal was constructed on adjoining property, and as a result of the canal, a waterbody existing on the plaintiff's property was drained or diverted away.   The Tujague court specifically distinguished Crump inasmuch as there was no trespass involved in the latter case, and only a single event, the construction of the canal on neighboring property, which then affected the plaintiff's property.  Accordingly there was only a single tort, the digging of the canal, and although the plaintiff suffered continuing damages as a result of that tort, this did not compel the conclusion that the wrongdoing itself was continuing.  In contrast, as in the cases cited above, where a trespassing defendant has placed a structure or deposited tangible debris or objects upon property belonging to another, the continuing presence of the offending structure or debris operates as a continuing interference with the landowner's use and enjoyment of his property rights.  As such, the wrongdoing is continuing, and the doctrine of continuing tort is applicable to the claim.

The defendants also assert that, because they entered into a contract in December, 2000, pursuant to which they conveyed their interest in the pipeline and right-of-way to CLEPCO, the continuing nature of their wrongdoing ceased at that time, and thus, any continuing wrongdoing on their part abated at that time.  This position is untenable under the law, and the defendants cite no jurisprudence in support of this contention.  To the contrary, as noted above, it has been held that "a trespass committed by illegally erecting a structure on immovable property continues as long as the offending object remains on the

30

premises, and the trespass is terminated only by the removal of the object wrongfully placed there." <u>Joseph A. Neyrey, General Contractor, Inc. v. Louisiana Power & Light Co.</u>, <u>supra</u>.  <u>See also</u> <u>Prosser and Keaton on the Law of Torts</u>, <u>supra</u> (noting that "there is a continuing wrong so long as the offending object remains").  In such instance, "prescription does not begin to run until the offending object is removed."  <u>Vial v. South Central Bell Telephone Company</u>, <u>supra</u>.  Accordingly, because the offending nature of the pipeline constructed by the Placid Refining Company in 1981 and 1982 persisted on the plaintiffs' property until such offending nature was removed by virtue of the pipeline servitude granted by the plaintiffs to CLEPCO in 2007, the plaintiffs' claims have not been shown to be prescribed.

<b><u>RECOMMENDATION</u></b>

It is recommended that the defendants' Motion for summary judgment, rec.doc.no. 24, be **DENIED**.

Signed in chambers in Baton Rouge, Louisiana, September 1, 2010.

_____

**MAGISTRATE JUDGE CHRISTINE NOLAND**

31