UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA


| | |
|---|---|
| W. PATRICK AERTKER, JR., ET AL. | CIVIL ACTION |
| VERSUS | NO: 07-473 |
| PLACID HOLDING COMPANY, ET AL. | SECTION: "J" |

**ORDER AND REASONS**

Before the Court is Defendants' Motion *in Limine* (Rec. Doc. 37) and Plaintiffs' Opposition (Rec. Doc. 38), on supporting memoranda with oral argument held on November 9, 2011. The case is pending in the Middle District of Louisiana, but has been assigned to Section "J" of the Eastern District of Louisiana. The Court previously considered the motion and legal memoranda, the record, and the applicable law, and denied the motion in open court, but now provides additional written reasons in support of its holding.

**PROCEDURAL HISTORY AND BACKGROUND FACTS**

Plaintiffs are the children of W. Patrick Aertker, Sr., and they seek compensation for alleged profits from an eight-inch

1

petroleum pipeline they allege to own by accession.  Plaintiffs
allege that the constructor of the pipeline owes them
compensation for the years 1981-2000.  Mr. Aertker, Sr. purchased
the subject 550 acres of land in 1936.  In 1948, he granted a
99-year term timber lease to Herbert Tannehill.  Mr. Tannehill's
interest in the lease was then assigned to Urania Lumber Co.,
ancestor-in-title to the Louisiana-Pacific Corporation
("Louisiana Pacific" or "Lessee").  In 1981, Louisiana Pacific
granted a right-of-way to defendant Placid Refining Co.
(individually, and/or collectively with other named defendants,
"Placid") to allow same to run an eight-inch pipeline across the
property.  Placid constructed the pipeline, and in 2000, Placid
transferred its interest in the pipeline and the right-of-way to
Central Louisiana Energy Pipeline Company, LLC ("CLEPCO").

    At the death of Mr. Aertker, Sr., W. Patrick Aertker, Jr.
and Betty Aertker Harwood inherited the subject 550 acres.    In
1996, they transferred their separate interests to two limited
liability companies that each sibling appears to own.  In October
of 2002, Mr. Aertker, Jr. learned of the pipeline's existence but
assumed that the right-of-way permitting its existence had been
granted by his father, Mr. Aertker, Sr.  In 2005, however, he
discovered what he perceived to be problems with the grant of the

right-of-way.  Plaintiffs proceeded to file the instant lawsuit, contending that Placid is indebted to them for the fair rental value of the pipeline from the time it was constructed until 2000, when it was conveyed to CLEPCO.  They estimate the fair rental value to be based on the number of barrels of oil transported through the pipeline during those 19 years at the rate of at least $1.00 per barrel with up to 12,000 barrels passing through the pipeline per day.  Plaintiffs have settled their claims against CLEPCO, granting CLEPCO a servitude of passage for the pipeline.

On September 1, 2010, Magistrate Judge Noland of the Middle District of Louisiana recommended denial (Rec. Doc. 31) of Placid's Motion for Summary Judgment (Rec. Doc. 24).  In that motion, Defendants requested dismissal on three grounds:  first, that the Plaintiffs' claims are barred by collateral estoppel and/or acquisitive prescription; second, that any compensation would be limited by the St. Julien doctrine; and third, that the claims are barred by liberative prescription under the Louisiana Civil Code.  The district judge adopted the Magistrate Judge's recommendation (Rec. Doc. 33).

In the present Motion *in Limine* (Rec. Doc. 37), Placid asks that argument concerning Plaintiffs' claims of ownership by

accession of immovables be excluded from this case.  The motion, as filed, requests that any reference to Plaintiffs' theory of accession of immovables be excluded at trial.

## THE PARTIES' ARGUMENTS

Placid moves to exclude Plaintiff's theory of "accession of immovables."  It argues that regardless of whether Plaintiffs consented to construction of the pipeline, they cannot "accede" to ownership thereof unless they comply with the Civil Code requirements for accession—which Placid argues have not been fulfilled.  Because Placid made an improvement to Plaintiffs' property in good faith, accession cannot occur until the landowners make written demand, giving Placid the option to remove the improvements or demand payment therefor.  Because the property is also burdened with a lease, additional notice requirements operate as prerequisites to Plaintiffs' accession to the pipeline.  Further, Placid built the pipeline with the consent and authorization of Lessee, during the lease term, and said Lessee under its lease with Plaintiffs had the legal authority to erect the pipeline.  Thus because Placid, as Louisiana Pacific's licensee, built the pipeline in good faith, accession cannot occur until the expiration of the lease and compliance by lessor-Plaintiffs with the notice requirements.

4

Additionally, Placid argues that in the settlement agreement with CLEPCO, Plaintiffs acknowledged CLEPCO's ownership, and thus cannot now claim ownership of the pipeline.

The Plaintiffs respond that according to the law of accession, they own the pipeline and are thus entitled to compensation from Placid for the 19 years that Placid purported to own the pipeline. Plaintiffs argue that Civil Code Article 2695's notice requirements pertaining to a lessor's ownership of a thing constructed by a lessee during a lease term are not applicable because Article 2695 only applies to lease relationships. There was no lease between Plaintiffs and Placid, who had a mere right-of-way from Plaintiffs' Lessee. Plaintiffs focus on the construction of the pipeline as being in bad faith; they argue that Lessee had no right to grant such a pipeline right-of-way because the lease pertained only to timber. As a result, Placid was the grantee of an invalid right-of-way from Louisiana Pacific, and Plaintiffs have always owned the pipeline that was constructed on their land without their consent. Plaintiffs further state that the Magistrate Judge's Report and Recommendation, which was later adopted by the district court as its ruling (Rec. Doc. 33), found that Plaintiffs did not consent or acquiesce to the construction for purposes of the St. Julien

doctrine.

Placid further argues that under the Civil Code it is entitled to reimbursement for either the value of materials and workmanship or the enhanced land value resulting from its construction of the pipeline. This is alleged to be true regardless of whether Placid constructed the pipeline in good or bad faith. To this point, Plaintiffs argue that any equitable claim for the value of the materials or workmanship in the pipeline belonged to CLEPCO, and that claim was resolved in their settlement. Additionally, Plaintiffs did not acknowledge CLEPCO's ownership of the pipeline. If CLEPCO was the owner, it would have had no need to file an expropriation suit and pay a $30,000 settlement to Plaintiffs. Further, Placid was not a party to the settlement agreement, and Plaintiffs reserved their rights against all other parties including the right to compensation from Placid for the fair rental value of the pipeline.

## DISCUSSION

The present motion was filed as a motion *in limine*. Placid argues that under Federal Rule of Evidence 104(b), because there is no legal basis to support Plaintiffs' claim of accession of immovables, any evidence pertaining to accession would be

irrelevant and thus should be excluded at trial.  However, the
Court views this motion as treated more properly as one for
summary judgment.  Namely, Placid moves that Plaintiffs be
prohibited from making any argument related to or supporting
Plaintiffs' claims based on a theory of accession of immovables.
Rec. Doc. 37, at 3.  This is equivalent to moving for dismissal
of claims of accession, based on the argument that there is no
genuine issue of material fact and thus any claims of accession
fail as a matter of law.

## A.  Legal Standard

Summary judgment is appropriate when "the pleadings, the
discovery and disclosure materials on file, and any affidavits
show that there is no genuine issue as to any material fact and
that the movant is entitled to judgment as a matter of law."
FED. R. CIV. P. 56(c)(2); Celotex Corp. v. Catrett, 477 U.S. 317,
322-23 (1986); Little v. Liquid Air Corp., 37 F.3d 1069, 1075
(5th Cir. 1994).  When assessing whether a dispute as to any
material fact exists, the Court considers "all of the evidence in
the record but refrains from making credibility determinations or
weighing the evidence."  Delta & Pine Land Co. v. Nationwide
Agribusiness Ins. Co., 530 F.3d 395, 398 (5th Cir. 2008).  All
reasonable inferences are drawn in favor of the nonmoving party,

but a party cannot defeat summary judgment with conclusory

allegations or unsubstantiated assertions. <u>Little</u>, 37 F.3d at

1075. A court ultimately must be satisfied that "a reasonable

jury could not return a verdict for the nonmoving party." <u>Delta</u>,

530 F.3d 399.

If the dispositive issue is one on which the moving party

will bear the burden of proof at trial, the moving party "must

come forward with evidence which would 'entitle it to a directed

verdict if the evidence went uncontroverted at trial.'" <u>Int'l</u>

<u>Shortstop, Inc. v. Rally's, Inc.</u>, 939 F.2d 1257, 1263-64 (5th

Cir. 1991) (citation omitted).  The nonmoving party can then

defeat the motion by either countering with sufficient evidence

of its own, or "showing that the moving party's evidence is so

sheer that it may not persuade the reasonable fact-finder to

return a verdict in favor of the moving party." <u>Id.</u> at 1265.

If the dispositive issue is one on which the nonmoving party

will bear the burden of proof at trial, the moving party may

satisfy its burden by merely pointing out that the evidence in

the record is insufficient with respect to an essential element

of the nonmoving party's claim. <u>See</u> <u>Celotex</u>, 477 U.S. at 325.

The burden then shifts to the nonmoving party, who must, by

submitting or referring to evidence, set out specific facts

showing that a genuine issue exists.  <u>See</u> <u>id.</u> at 324.  The

nonmovant may not rest upon the pleadings, but must identify

specific facts that establish a genuine issue for trial.  <u>See,</u>

<u>e.g.,</u> <u>id.</u> at 325; <u>Little</u>, 37 F.3d at 1075.

**B.  Inapplicability of Article 2695 Requirements**

The thrust of Placid's argument is that Plaintiffs should be

prevented from advancing a theory of accession of immovables at

trial because they have not complied with notice obligations

imposed by the Louisiana Civil Code.  One of the chief provisions

relied upon is Civil Code Article 2695, which places certain

obligations upon the lessor at the expiration of the lease

regarding improvements made by the lessee during the lease term.

Placid argues that Plaintiffs are the lessors and Placid is the

licensee of Lessee Louisiana Pacific, within the meaning of

Article 2695.  Thus, Placid argues, because it—as Louisiana

Pacific's licensee—built the pipeline during the lease term,

accession in favor of Plaintiff-lessors cannot occur until

expiration of the lease and compliance by them with the notice

requirements of Article 2695.

The Court finds that Article 2695 does not apply to

foreclose Plaintiffs' evidence of accession.  The article is

situated in Civil Code Title IX, entitled "Lease."  The comment

to the article plainly states that the article only applies where

the parties have a lessee-lessor relationship:

> Civil Code Article 2695 (Rev. 2004) applies only if the
> relationship between the two parties qualifies as a
> lease. For other relationships, such as those involving
> precarious possessors who are not lessees, Civil Code
> Articles 493 et seq. remain applicable.

LA. CIV. CODE art. 2695 cmt. c.  The relationship between

Plaintiffs and Placid is *not* one of lease—rather, at most, Placid

is the licensee of a lessee (Louisiana Pacific), who has a lease

with Plaintiffs.  Thus Article 2695 has no bearing upon the

outcome of the present motion.  Rather, as the comment to that

article indicates, the specific accession articles (Articles 493

et seq.) apply because Placid is a precarious possessor *other*

*than a lessee*—namely, the putative grantee of a right-of-way by

Lessee Louisiana Pacific.

## C.  Applicability of Accession Articles

The Court now reaches the essence of Placid's argument that

Plaintiffs' claims based on accession fail as a matter of law.

As an initial matter, the Court rejects Placid's argument that it

is the owner of the pipeline based on the settlement agreement

with CLEPCO, which allegedly acknowledged that CLEPCO owns the

pipeline.  First, the Court agrees with Plaintiffs that it is

inconsistent with an acknowledgment of ownership for CLEPCO to

10

have filed an expropriation suit and then settle said suit via payment of $30,000 for a servitude. Second, it is true that in the settlement agreement, Plaintiffs released all claims they had or may have had against CLEPCO "connected with CLEPCO's ownership, use, operation and maintenance" of the pipeline "from the time that CLEPCO acquired ownership" of the pipeline. Rec. Doc. 37-1, at 14. However, another section entitled "Limitation on Third Party Beneficiaries" states that nothing in the agreement shall be construed to confer on any other party any rights or remedies. Id. at 15. It further states that Plaintiffs reserve "all causes of action arising out of the construction, operation and maintenance of the 8-inch pipeline and 45-foot wide right-of-way across the property as against all persons other than CLEPCO and its successors and assigns." Id. at 16. Clearly, any admission of CLEPCO's ownership was only for the sake of settling claims between Plaintiffs and CLEPCO, and the agreement states that it does not inure to the benefit of parties lacking privity, such as Placid.

Placid's main argument is an assertion that Plaintiffs have not complied with the notice requirements of the accession articles. Civil Code Article 493 provides, in pertinent part:

> Buildings, other constructions permanently attached to
> the ground, and plantings made on the land of another

11

with his consent belong to him who made them. *They belong to the owner of the ground when they are made without his consent*.

*When the owner of* buildings, *other constructions permanently attached to the ground*, or plantings *no longer has the right to keep them on the land of another*, he may remove them subject to his obligation to restore the property to its former condition. If he does not remove them within ninety days after written demand, the owner of the land may, after the ninetieth day from the date of mailing the written demand, appropriate ownership of the improvements by providing an additional written notice by certified mail, and upon receipt of the certified mail by the owner of the improvements, the owner of the land obtains ownership of the improvements and owes nothing to the owner of the improvements. Until such time as the owner of the land appropriates the improvements, the improvements shall remain the property of he who made them and he shall be solely responsible for any harm caused by the improvements.

LA. CIV. CODE art. 493 (emphasis added). The second quoted paragraph clearly imposes a notice requirement: the owner of the land may appropriate ownership of the improvements "by providing an additional written notice," which is to follow a prior "written demand." Id. Placid makes much of these notice requirements, indeed, argues that because there is no evidence in the record that Plaintiffs have complied with these requirements, the Court should disallow Plaintiffs from seeking to introduce any evidence at trial of accession to the pipeline at issue.

The Court finds, however, that Placid misreads Article 493. The first paragraph could not be clearer. Where someone other

than the owner of the ground builds a construction on said ground *without the ground owner's consent*, the improvement does *not* belong to the builder, but rather the owner of the ground. <u>Id.</u> Put simply, improvements belong to the ground owner when made without his consent. <u>Id.</u> Thus if the landowners did not consent to the construction of the pipeline on their land, even though Placid built the pipeline, it is not the owner—the landowners are. Therefore, Article 493's second paragraph, which imposes a "notice" requirement, does not apply. It states, "When the owner of [improvements] *no longer has the right to keep them on the land of another*," he may remove them, and if he does not, the landowner may follow certain notice requirements in order to become the owner of the improvements. But this description of an owner who "*no longer*" has a right to keep the improvement does not apply where *the builder never was the owner*. If the landowners did not consent to the construction of the pipeline, Placid was never the owner; and thus Article 493, Paragraph 2's notice requirements would not be implicated.[1]

---

[1] The second paragraph of Article 493 applies where the owner of the improvement and the owner of the land are two different persons. It applies whenever the owner of the improvement "no longer has the right to keep [it] on the land of another." LA. CIV. CODE art. 493. The improvement owner no longer has the right to keep the thing there when the parties' legal relationship terminates, as when a lease expires. <u>Id.</u> cmt. b (Comments to 1984 Amendment). <u>See</u> <u>also</u> A.N. Yiannopoulos, Property § 116, *in* 2 Louisiana Civil Law Treatise (Westlaw 2011) ("Until 1984, the Civil Code did not provide for the fate of improvements made with the consent of the owner of the ground, after such

Therefore, the real issue is whether Placid has made a *prima facie* showing that the landowners consented to construction of the pipeline.  If they consented, Placid owns the pipeline, and Plaintiffs' claim of accession must be dismissed absent a showing of compliance with the second paragraph's notice requirements. If, however, Placid does not demonstrate the landowners' consent, Plaintiffs have always owned the pipeline, and Article 493 does not impose any notice requirements that Plaintiffs must meet before they can claim accession to the pipeline.[2]

It appears that the Magistrate Judge, in her recommendation of denial (Rec. Doc. 31) of Placid's Motion for Summary Judgment (Rec. Doc. 24), already determined that the landowners did not consent to the construction.  In finding that the "consent or acquiescence" element of a <u>St. Julien</u> servitude was absent, she stated:

_____

consent terminated. The addition of a new paragraph to Article 493 filled this gap.").  The second paragraph clearly does not apply in this case where there is no proof of consent to construction of the pipeline, and where Placid never had a lease over the land at issue.

[2] Whether Placid was in good faith or bad faith has no bearing on the inquiry of Plaintiffs' right of accession.  <u>See</u> LA. CIV. CODE art. 493 cmt. c. ("Buildings, *other constructions permanently attached to the ground*, and plantings *made on the land of another without his consent*, **as by a good or bad faith possessor***, belong to the owner of the ground.*") (emphasis added); LA. CIV. CODE art. 496 cmt. c. ("All improvements made by a possessor in good faith on another's immovable belong to the owner of the immovable. Arts. 490 and 493, *supra*."); LA. CIV. CODE art. 497 cmt. e. (same, regarding bad faith possessor).

14

> The defendants do not suggest that the
> Louisiana-Pacific Corporation in fact had the
> authority, by virtue of its timber lease, to grant the
> pipeline right-of-way, or that the timber lease could
> reasonably be interpreted as having conferred such
> authority. Nor do the defendants contradict the
> plaintiffs' factual assertion that the landowners had
> little contact with the subject property and so did not
> learn of the existence of the pipeline until 2002, twenty
> (20) years after construction of the pipeline, thereby
> negating any suggestion that the plaintiffs consented to
> or acquiesced in its construction.

Rec. Doc. 31, at 23-24. She then expressly found that there was no St. Julien servitude because "there was no consent or acquiescence of the landowner at the time of construction of the offending structures built by the Placid Refining Company upon the landowner's property." Id. at 25 (emphasis in original). See also id. at 27 (finding inapplicability of the St. Julien doctrine based "[u]pon a finding that there was clearly no acquiescence or consent by the landowner to the taking of the pipeline right-of-way or the construction of the pipeline by Placid Refining Company in 1981 and 1982 . . . .").

Arguably, the Court's ruling (Rec. Doc. 33) adopting the Magistrate Judge's recommendation is "law of the case." However, the prior judicial decision was that consent was absent for the purpose of application of the St. Julien doctrine. The Report and Recommendation does not appear to have addressed the argument that Lessee Louisiana Pacific had consent from Plaintiffs for

construction of a pipeline by virtue of the lease, and that Placid derivatively had consent as the Lessee's grantee of a right-of-way to build said pipeline. However, the Court now finds that Placid fails to prove that Louisiana Pacific would have had authority under the lease to construct a pipeline—and by extension, authority to grant a right-of-way to Placid to construct such a pipeline.

Civil Code Article 2683 obligates the lessee to "use the thing as a prudent administrator and in accordance with the purpose for which it was leased." LA. CIV. CODE art. 2683(2). The purpose of the lease at issue does not support the use of the land for construction of a pipeline. The *res* is described in the lease agreement as "[a]ll of the timber, wood and forest products of every nature and kind now standing, growing and being and hereafter growing and being, during the term of this Lease," upon the described tract of land. Rec. Doc. 37-1, at 2. The lease rights enumerated in the agreement are to "conduct reforestation operations" and "to plant and grow trees and other forest products." Id. The parties further agreed that "one of the primary purposes" of the lease is the right to use the land "for the purpose of growing timber, wood and other forest products and promot[e] the supply, stand and growth of timber, wood and forest

products on the land." <u>Id.</u> at 3.  The agreement permits the construction and maintenance of "trails, fire breaks, roads and logging railroads, sawmills and planing mills and logging camps." <u>Id.</u> at 4-5.

The totality of the agreement shows that its purpose is to permit timber operations.  The permitted constructions all pertain to logging and timber operations, which do not include the construction of a pipeline.  A pipeline does not share the commonality of a construction related to the growth and marketing of timber and related forest products.  The inclusion of these enumerated permitted constructions excludes other non-related items, such as the pipeline at issue.  The only potential ambiguity arises in language in the lease that gives the "SELLER-LESSOR" the right to grant mineral leases "and that **he** or the 'SELLER-LESSOR' shall have the necessary rights of ingress and egress for the purpose of . . . [among other things,] laying pipe lines . . . ." <u>Id.</u> at 5 (emphasis added).  If "he" refers to the lessee, then arguably Louisiana Pacific expressly had the right to construct a pipeline, and was thus authorized to grant the right-of-way to Placid.  However, the "he" seems to only have as its antecedent the previously-used term "SELLER-LESSOR," which would make "he" redundant.  However, the Court need not resolve

this issue of ambiguity in interpretation at this point.  At this
stage of the litigation, because the contract overwhelmingly
suggests a purpose only permitting timber-related constructions,
Placid has not made a *prima facie* showing that the lease
constituted implied or express consent to Louisiana Pacific to
build a pipeline.  Thus there is insufficient proof of consent
that would make Placid the pipeline owner under Article 493.

In rejecting Placid's argument that Louisiana Pacific as
Lessee had permission to build the pipeline, and thus Placid as
Louisiana Pacific's "licensee" or "assignee" also had permission,
the Court finds the decision in Southern Casing of Louisiana,
Inc. v. Houma Avionics, Inc., 809 So. 2d 1040, 1051 (La. App. 1st
Cir. 2001) persuasive.  There, a parish airport commission was
the lessor of property onto which an airplane hangar was
subsequently constructed.  However, it was not the lessee who
built the hangar; it was a party that had a business arrangement
with the lessee.  The lessee and lessee's contracting party
disputed ownership of the hangar.  The court found that it could
not equitably resolve the contracting party's claim of ownership
or the lessee's claims for unjust enrichment because the airport
commission was a necessary party.  Id. at 1052.  The court found
that the commission was a necessary party because it might have

owned the hangar: based on Article 493, the hanger belonged to the owner of the ground unless the owner had given consent to construction. Id. Although the record established that the lessee had consented to the construction, the record did not establish that the airport commission, who owned the ground, had consented. Id. The court found that without the introduction of the lease into evidence, the record did not establish that the lessor-owner had authorized the lessee to construct buildings on the property, and thus there was insufficient proof "that the consent of the lessee is tantamount to the consent of the lessor." Id. The court could not infer that the airport commission consented to the construction and thus could not determine the ownership issue. Id.

Southern Casing is analogous to the present case. In both cases the lessee expressly consented to the construction by a party lacking privity with the landowner. In both cases, there was no evidence of the landowner's express consent. The Louisiana court in Southern Casing found that reference to the lease was appropriate to determine whether the landowner had authorized the lessee's construction, and therefore implicitly consented to construction by the lessee's contracting party. In this case, Placid had no contractual privity with the landowners,

and the Court must look to the lease between Plaintiffs and
Louisiana Pacific to determine whether the latter had Plaintiffs'
consent to construct the pipeline. That Placid had Louisiana
Pacific's consent via the right-of-way to build the pipeline does
not answer the ownership question. Only if the lease authorized
Louisiana Pacific to build the pipeline could there have been a
"pass through" consent flowing to Placid to permit it to
construct the pipeline. As the Court has already stated, the
timber lease by its terms does not appear to permit the
construction of a pipeline, and thus Placid fails to meet its
summary judgment burden of demonstrating landowner consent to the
construction.[3] Therefore, Placid fails to meet its summary
judgment burden of proving an entitlement to an order preventing
Plaintiffs from bringing accession claims.

**D.  Arguments Regarding Reimbursement to Placid**

Placid argues that it is entitled to payment from
Plaintiffs, regardless of whether Placid was in good or bad faith
when it constructed the pipeline. Placid cites Civil Code

---

[3] Cases cited by Placid are distinguishable. For example, <u>Campagna v. Tenneco Oil Co.</u>, 522 So. 2d 159 (La. App. 4th Cir. 1988) addressed a lease that was much broader than the lease at issue. Where the landowner sued the lessee regarding the lessee's grant of permission to a police jury to dig a drainage canal on the property, the court found that there was no breach of the lease, which gave the lessee "full title to the property in fee simple" and expressly gave the lessee "the right to dredge canals." <u>Id.</u> at 161.

Articles 497 and 529.  Article 497 provides that as to

constructions made by a bad faith possessor, the owner may keep

them or demand demolition and removal; and if the owner does keep

them, he must pay either the current value of the materials and

workmanship of separate improvements that he has kept or the

immovable's enhanced value.  LA. CIV. CODE art. 497.  Article 529

states, "The possessor, whether in good or in bad faith, may

retain possession of the thing until he is reimbursed for

expenses and improvements which he is entitled to claim."  LA.

CIV. CODE art. 529.

The Code appears to provide for reimbursement to Placid,

even if Placid never owned the pipeline at issue—assuming it

meets the legal status of a possessor.  See A.N. Yiannopoulos,

Property § 116, in 2 Louisiana Civil Law Treatise n.6 (Westlaw

2011) (stating that the landowner is bound under Article 496 or

497 to reimburse the erector of the construction made without the

landowner's consent, where the erector is a possessor; and

stating that the landowner may be bound under principles of

unjust enrichment).  However, Placid has not moved with respect

to its alleged entitlement to any such reimbursement, but rather

has moved to exclude evidence of accession in favor of

Plaintiffs.  Thus the Court makes no ruling on any reimbursement

to which Placid arguably may be entitled.

For the foregoing reasons, **IT IS ORDERED** that Defendants'
Motion *in Limine* (Rec. Doc. 37) be and is hereby **DENIED.**

New Orleans, Louisiana this 9th day of November, 2011.

CARL J. BARBIER
UNITED STATES DISTRICT JUDGE