UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

AERTKER ET AL                                    CIVIL ACTION

VERSUS                                           NO: 07-473

PLACID HOLDING COMPANY ET AL                     SECTION: "J"(5)

**ORDER AND REASONS**

Before the Court are Defendants' Motion for Summary Judgment
(Rec. Doc. 60), Plaintiffs' opposition to same (Rec. Doc. 61),
and Defendants' reply (Rec. Doc. 64).  The motion is set for
submission on June 6, 2012, on supporting memoranda and without
oral argument.  Having considered the motion, the legal
memoranda, the record, and the applicable law, the Court now
issues its ruling.

**PROCEDURAL HISTORY AND BACKGROUND FACTS**

In this civil action, Plaintiffs seek compensation for
profits from an eight-inch petroleum pipeline they claim to own
by accession.  Plaintiffs allege that the constructor of the
pipeline owes them compensation for the years 1981-2000, during

1

which time Defendants operated the pipeline. In 1948, Plaintiffs' predecessor-in-title granted a 99-year timber lease to Herbert Tannehill. Tannehill assigned his interest in the timber lease to Urania Lumber Co., ancestor-in-title to the Louisiana-Pacific Corporation. In 1981, the Louisiana Pacific Corporation granted a right-of-way to defendant Placid Refining Co. (individually, and/or collectively with other named defendants, "Placid") to allow same to run an eight-inch pipeline across approximately 1¼ miles of Plaintiffs' property. Placid constructed the pipeline and used it continuously until 2000, when Placid transferred its interest in the pipeline and the right-of-way to Central Louisiana Energy Pipeline Company, LLC ("CLEPCO").

In October of 2002, Plaintiff W. Patrick Aertker, Jr. learned of the pipeline's existence but assumed that the right-of-way permitting its existence had been granted by his father, Mr. Aertker, Sr. In 2005, however, Plaintiff W. Patrick Aertker, Jr. discovered what he perceived to be problems with the grant of the right-of-way. Plaintiffs proceeded to file the instant lawsuit on October 6, 2007, contending that Placid is indebted to them for the fair rental value of the pipeline from the time it was constructed in 1981 until 2000, when Placid

conveyed the right-of-way to CLEPCO.  Plaintiffs estimate the

fair rental value to be based upon the number of barrels of oil

transported through the pipeline during the period of Placid's

putative ownership of the right-of-way and pipeline.  In state

court, Plaintiffs settled their claims against CLEPCO, granting

CLEPCO a servitude of passage for the pipeline.


**THE PARTIES' ARGUMENTS**

Placid's motion for summary judgment re-urges an argument

for dismissal of Plaintiffs' claims based upon the Louisiana law

of liberative prescription.[1]  Placid avers that it sold the

pipeline to CLEPCO on October 30, 2000, and thereafter, because

Placid performed no further acts with respect to the pipeline,

there existed no "continuing tort" that could have interrupted

the prescriptive period within which Plaintiffs were required to

sue.  Because, Placid argues, there was no interruption of the

prescriptive period under the continuing tort doctrine,

---

[1] The Magistrate Judge who heard a prior motion for summary judgment generally addressed the same arguments raised in the instant motion.  She recommended that the motion be denied (Rec. Doc. 31), and the District Judge adopted the recommendation (Rec. Doc. 33).  Placid acknowledges in its memorandum in support of the instant motion that it is asking the Court to reconsider the prior decision.  See Rec. Doc. 60-1, at 5 ("The significance of the sale to CLEPCO was not made sufficiently clear by the Placid Group in the first motion.  It was not the occurrence of the sale which supported the plea of liberative prescription, but rather the effect of that sale. . . . Because the issue was not fully addressed in the first motion, the Placid Group asks that it's [sic] motion be reconsidered.").

Plaintiffs had one year from the date they acquired knowledge of the damage to file suit.  Because Mr. Aertker, Jr. discovered the existence of the pipeline and right-of-way on October 17, 2002, more than one year prior to Plaintiffs' filing of suit on October 6, 2007, Placid argues that Plaintiffs' claims are barred by liberative prescription.

In its initial memorandum, Placid devotes the majority of its argument to an argument for why the doctrine of continuing tort does not apply in this case.  Placid argues that more than the mere presence of the pipeline on the property was required to interrupt the prescriptive period.  Rather, it argues, any allegedly wrongful conduct attributable to Placid terminated when Placid conveyed the entire pipeline system to CLEPCO, at which time Placid no longer had a right or a corresponding duty to remove something that it no longer owned.  Placid argues that it is the absence of wrongdoing after the date of sale that prohibits an interruption of prescription during the time period postdating the sale.  It argues that it did not commit any wrongdoing within one year prior to the date on which Plaintiffs filed suit, and therefore Plaintiffs' claims are prescribed.  Additionally, Placid argues that even if it and CLEPCO were joint tortfeasors, Plaintiffs' compromise with CLEPCO did not interrupt

the prescriptive period as to Placid because CLEPCO's conduct was separate from Placid's and because Plaintiffs' claims against Placid had prescribed prior to the confection of the compromise.

In their opposition memorandum, Plaintiffs initially purport to clarify the nature of Placid's motion, arguing that Placid challenges only their cause of action sounding in tort, but not their separate cause of action arising under the law of accession to immovables. Plaintiffs assert that the one-year liberative prescriptive period applicable to the trespass claim is inapplicable to the accession claim. Instead, Plaintiffs argue, the accession claim is a petitory or real cause of action, which is not subject to liberative prescription. Accordingly, Plaintiffs argue that their accession claim is unaffected by Placid's motion. With respect to the trespass claim, Plaintiffs argue that the claim is not barred by prescription. They argue that the ongoing use of the pipeline by Placid, and subsequent use by CLEPCO, as well as the unauthorized presence of the pipeline on Plaintiffs' land, constitutes a single, continuing tort for which the prescriptive period did not commence until CLEPCO entered into a compromise with Plaintiffs. Because Plaintiffs filed suit within a year from the date on which prescription began to accrue, they argue that they brought their

trespass claim timely.  Accordingly, Plaintiffs argue that their tort cause of action is not time-barred and their accession-to-immovables cause of action is not subject to liberative prescription.  Thus, they request that the Court deny Placid's motion.

In its reply memorandum, Placid argues that the right of accession is simply a component of the damages that Plaintiffs seek, and therefore if the tort claim is time-barred, so is the right to recover damages under the law of accession. Specifically, Placid argues that accession is simply an incident of ownership, and while it may be the subject of a real action, it is not a petitory action—but rather a possessory action.  It avers that Plaintiffs' claim to accession is merely an element of the trespass claim, which sounds in tort.  With respect to Plaintiffs' continuing tort argument, Placid argues that CLEPCO's use of the pipeline and the pipeline's continued existence do not have any effect on the claims against Placid.  Placid argues that any action committed by CLEPCO after Placid sold the pipeline to CLEPCO has no effect as to the claims against Placid because any liability of Placid and CLEPCO is not solidary.  Therefore, Placid argues that summary judgment should be granted in its favor.

## LEGAL STANDARD

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (citing FED. R. CIV. P. 56(c)); Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co., 530 F.3d 395, 398 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but a party cannot defeat summary judgment with conclusory allegations or unsubstantiated assertions. Little, 37 F.3d at 1075. A court ultimately must be satisfied that "a reasonable jury could not return a verdict for the nonmoving party." Delta, 530 F.3d at 399.

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" Int'l

<u>Shortstop, Inc. v. Rally's, Inc.</u>, 939 F.2d 1257, 1263-64 (5th Cir. 1991) (citation omitted). The nonmoving party can then defeat the motion by either countering with sufficient evidence of its own, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." <u>Id.</u> at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. <u>See</u> <u>Celotex</u>, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. <u>See</u> <u>id.</u> at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for trial. <u>See, e.g.,</u> <u>id.</u> at 325; Little, 37 F.3d at 1075.


**DISCUSSION**

The ruling on Placid's motion depends upon the resolution of several issues. First, there is the fact that the District Judge previously decided the issue, although Placid avers that it

raises new arguments in the instant motion. This is not an issue
that needs to be separately addressed, but to the extent it makes
the instant motion one for reconsideration, it necessitates a
higher burden for Placid to carry.[2]  Second, the Court must
identify the nature of the causes of action asserted in the
complaint.  Third, the Court must determine the applicable
prescriptive period with respect to each cause of action.
Fourth, the Court must determine whether those periods have
accrued, which includes consideration of whether the doctrine of
"continuing tort" assists Plaintiffs in demonstrating the
timeliness of their claims.

## A.  Prescriptive Periods

### 1.  Causes of Action Asserted

The complaint alleges two causes of action.  The first is
styled "Petitory Action for Accession to Immovables."  Rec. Doc.
1, at 7.  Plaintiffs aver that "[u]nder Louisiana law governing
accession in relation to immovables," they have owned the
pipeline since it was placed upon their land, and therefore
Placid is indebted to them for the fair rental value of the

---

[2] A motion for reconsideration is treated as a motion to alter or amend
under Rule 59(e).  Bass v. U.S. Dep't of Agric., 211 F.3d 959, 962 (5th Cir.
2000).  "A motion to alter or amend the judgment under Rule 59(e) must clearly
establish either a *manifest error of law* or fact or must present newly
discovered evidence . . . .".  Schiller v. Physicians Resource Group Inc., 342
F.3d 563, 567 (5th Cir. 2003) (quotation marks omitted) (emphasis added).

9

pipeline based upon the number of barrels of oil transported through the pipeline by Placid. Rec. Doc. 1, at 8, ¶¶ 27-29. The second cause of action is entitled "Continuing Tort." Rec. Doc. 1, at 8. The claim is phrased in the alternative to the first cause of action, and it alleges that the construction and maintenance of the pipeline across Plaintiffs' land without their consent constitutes a continuing tort of trespass, which continued until Plaintiffs granted CLEPCO a conventional servitude of passage. Rec. Doc. 1, at 9, ¶¶ 31-32. The complaint alleges that to compensate them for this tort, Plaintiffs are owed the profit of which they have been deprived, which is equivalent to the pipeline's fair rental value. Rec. Doc. 1, at 9, ¶ 34.

The second cause of action, for trespass, clearly sounds in tort. See Terre Aux Boeufs Land Co., Inc. v. J.R. Gray Barge Co., 2000-2754, p. 11 (La. App. 4th Cir. 11/14/01); 803 So. 2d 86, 95. Placid argues that the first cause of action relating to accession is actually an element of the damages that Plaintiffs arguably could recover under the trespass cause of action. Plaintiffs, on the other hand, argue that the accession claim constitutes a real or petitory action that is imprescriptible.

Accession is an incident of ownership. It permits an owner to accede to the ownership of everything that the owned thing produces or which is united with the owned thing. LA. CIV. CODE art. 482. Buildings and other constructions permanently attached to the ground made on the land of another without his consent belong to the owner of the ground. LA. CIV. CODE art. 493, ¶ 1. Things incorporated in or attached to an immovable so as to become its "component parts" belong to the owner of the immovable. LA. CIV. CODE art. 493.1. Plaintiffs invoke the law of accession by alleging that Placid constructed the pipeline without Plaintiffs' consent, and therefore the pipeline has always belonged to Plaintiffs. Therefore, accession is not a cause of action, properly speaking, but a right that may be afforded to the extent Plaintiffs can prove ownership of the pipeline under the law of accession as an incident of the ownership of the ground beneath it. The issue, then, is the proper classification of a cause of action for lost rent produced by something owned by accession.

The Fifth Circuit in Songbyrd, Inc. v. Bearsville Records, Inc., 104 F.3d 773 (5th Cir. 1997) squarely addressed the issue of classification of a cause of action to enforce one's right of accession under Louisiana law. In Songbyrd, the plaintiff sought

a judgment recognizing its ownership and awarding damages concerning song recordings. Id. at 775. Although the district court had concluded that the action had prescribed regardless of its characterization as contractual, quasi-contractual, or tort-based, the Fifth Circuit disagreed. It found that liberative prescription did not bar the action for damages arising from ownership because the action was a real action, which is not subject to liberative prescription:

> [A]ctions seeking recognition of ownership or enforcement of the rights thereof, whether in movable or immovable property, are not personal actions; they are "real actions." Such real actions, otherwise known as "revindicatory actions," are expressly authorized by the Louisiana Civil Code. . . . Further, any "incidental demand for damages made in an action for the recovery of an immovable [or a movable] does not affect the classification of the main demand as a real action."

Id. at 777 (citations and footnotes omitted). The court then stated that real actions seeking to protect the right of ownership are not subject to liberative prescription. Id. at 778. However, the court noted that the plaintiff's petition sought recognition of ownership in the recordings, "and only incidentally sought damages resulting from [the defendant's] contravention of [the plaintiff's] alleged ownership interest." Id. at 779. Accordingly, Songbyrd is distinguishable from the instant case, in that Plaintiffs do not seek to be declared

12

owners of the pipeline. They only seek recovery for damages for the alleged violation of their right of accession, which is an incident of their prior ownership of the pipeline prior to their grant of a conventional servitude to CLEPCO.

Although Plaintiffs argue that their first cause of action should be characterized as a petitory action, they do not seek a declaration of ownership of a thing, such that they are entitled to rights flowing from that ownership. Plaintiffs claim that they are entitled to lost rent for a specific period of time during which they allege they formerly owned the pipeline. They admit that they sold the pipeline to CLEPCO. Therefore, Plaintiffs' complaint seeks a declaration of ownership during a prior relevant period of time, in order to establish their right to fair rental value under the law of accession for that time period. <u>See</u> Rec. Doc. 1, at 8, ¶ 27 ("Under Louisiana law governing accession in relation to immovables, the 8-inch pipeline at all times pertinent hereto belonged to complainants.").

It is the manner in which Plaintiffs state their allegations that determines whether their action is petitory, rather than the label they attach to the allegations. <u>See</u> <u>In re Succession of</u> <u>Comeaux</u>, 2004-1335, p.4 (La. App. 3d Cir. 3/2/05); 896 So. 2d

1223, 1226 ("The allegations and prayer of the plaintiff's petition determine the true nature of the action and the applicable prescriptive period."). Because the petitory action requires a present claim of ownership, and Plaintiffs do not allege that they currently own the land or the pipeline, the Court is not persuaded that Plaintiffs' first cause of action is a petitory action. See LA. CODE CIV. PROC. art. 3651 ("The petitory action is one brought by a person who claims the ownership . . . of immovable property or of a real right therein . . . to obtain judgment recognizing the plaintiff's ownership.").

Upon consideration of the arguments and authorities of counsel for the parties, the label that correctly identifies Plaintiffs' putative cause of action related to accession remains unclear. The Fifth Circuit's decision in Songbyrd was not limited to petitory actions; the court stated that "real actions" are not subject to liberative prescription. 104 F.3d at 778. See also Trust for Melba Margaret Schwegmann v. Schwegmann Family Trust, 09-968, p.12 (La. App. 5th Cir. 9/14/10); 51 So. 3d 737, 750 (innominate real action for recovery of movable property is imprescriptible). A real action is one in which a person seeks recognition of ownership or enforcement of ownership rights.

14

<u>Johnson v. Hardy</u>, 98-CA-2282 (La. App. 1st Cir. 11/5/99); 756 So. 2d 328, 332 ("Actions seeking recognition of ownership or enforcement of ownership rights, whether in movable or immovable property are 'real actions,' not 'personal actions.'"). Therefore, in general, because a claim of accession to immovable property is a claim to enforce ownership rights, it would be a real action—an assertion of rights with respect to ownership in a thing.  However, a real action abates when the defendant is no longer in possession, as is the case with the instant action. See <u>Boykins v. Boykins</u>, 2007-0542, p.5 (La. App. 4th Cir. 4/30/08); 984 So. 2d 181, 185 ("Such real actions, otherwise known as 'revendicatory actions,' are expressly authorized by La. C.C. art. 526 . . . . However, the revendicatory action abates when the movable is no longer in the defendant's possession. Theoretically, a plaintiff may have a personal action for damages or unjust enrichment against the former possessor of the movable."); <u>Johnson</u>, 756 So. 2d at 332 (same).

Because the instant motion is one for summary judgment, Placid bears the burden of pointing out the absence of evidence that Plaintiffs' claims are not prescribed.  The legal authority cited by Placid does not appear to support the proposition that accession is an element of recovery in a trespass proceeding.

See <u>Britt Builders, Inc. v. Brister</u>, 618 So. 2d 899, 903 (La.

App. 1st Cir. 1993) (stating that a person injured by trespass

may recovery compensatory damages).  However, the Court need not

resolve that inquiry because Placid only argues that,

effectively, there is one cause of action in this case, which is

one for trespass.[3]  Therefore, the Court turns to the

prescriptive period applicable to trespass claims under Louisiana

law, to ascertain whether Placid carries its summary judgment

burden of proof that the trespass claim has prescribed.

## 2.  Applicable Prescriptive Period

"Liberative prescription is a mode of barring of actions as

a result of inaction for a period of time."  LA. CIV. CODE art.

3447.  Tort actions are generally subject to a liberative

prescription of one year.  LA. CIV. CODE art. 3492.  Thus, the

cause of action for trespass is subject to a one-year

prescriptive period.  The triggering event that commences the

prescriptive period is important.  Under the general rule

applicable to torts, the one-year period begins to run from the

date of injury.  <u>See</u> LA. CIV. CODE art. 3492 ("[P]rescription

commences to run from the day injury or damage is sustained.").

---

[3] <u>See</u> Rec. Doc. 64, at 2 ("The right of accession is simply part of the
damages sought by the Plaintiffs as a result of the alleged tortious conduct
of Placid.  If the tort claim is barred by liberative prescription, then all
elements of that claim, including the right of accession will also fall.").

However, a special rule applies where there is tortious damage to an immovable. Article 3493 provides, "When damage is caused to immovable property, the one year prescription commences to run from the day the owner of the immovable acquired, or should have acquired, knowledge of the damage." LA. CIV. CODE art. 3493. Trespass entails damage to land by a tort. <u>Boudreaux v. Terrebonne Parish Police Jury</u>, 422 So. 2d 1209, 1213 (La. App. 1st Cir. 1982). Therefore, absent an exception, the prescriptive period applicable to Plaintiffs' trespass claim began to run when Plaintiffs knew or should have known of the pipeline's existence and of its offending nature.

**B. Whether the Trespass Claim Is Barred by Liberative Prescription**

Turning to the facts of this case, Placid laid the pipeline in 1981. Plaintiff Mr. Aertker, Jr. did not discover the existence of the pipeline and right-of-way until October 17, 2002. It is unclear whether Plaintiffs knew or should have known of the offending nature of the pipeline immediately upon discovery of the right-of-way. Also unclear is the earliest moment at which Plaintiffs should have known that their predecessor-in-title had not granted the right-of-way. However, the complaint states that "[i]n the Fall of 2005, W. Patrick

Aertker, Jr. discovered that no valid right-of-way agreement existed for the 8-inch pipeline." Rec. Doc. 1, at 6, ¶ 18. Therefore, by Fall of 2005, Plaintiffs knew or should have known of the alleged trespass—and the resulting alleged damage to property—within the contemplation of Article 3493. Plaintiffs filed suit more than one year later, on July 6, 2007, and as a result, absent some further explanation, the trespass claim would facially appear to be prescribed. "The burden of proof on the prescription issue lies with the party asserting it unless the plaintiff's claim is barred on its face, in which case the burden shifts to the plaintiff." Mallett v. McNeal, 2005-2289 (La. 10/17/06); 939 So. 2d 1254, 1258. Plaintiffs argue that the trespass claim is not prescribed under the doctrine of "continuing tort."

The Louisiana Supreme Court has described a "continuing tort" as one "occasioned by continual unlawful acts," where there is "a continuing duty owed to the plaintiff and a continuing breach of that duty by the defendant." Crump v. Sabine River Authority, 98-C-2326 (La. 6/29/99); 737 So. 2d 720, 728. A continuing tort does not exist merely because of the existence of continuing damages; rather, there must be continuing unlawful acts. In re Med. Review Panel for Claim of Moses, 2000-2643, p.

16 (La. 5/25/01); 788 So. 2d 1173, 1183.  Plaintiffs argue that
Placid and CLEPCO owed a continuing duty to remove the offending
pipeline from Plaintiffs' land, and that the continuing existence
of the pipeline on the land prevented the prescriptive period on
the trespass claim from beginning to accrue until Plaintiffs
granted a right-of-way to CLEPCO in 2007, which terminated the
offensive nature of the pipeline's existence.  The argument
raises two issues:  (1) whether there was a continuing tort
attributable to Placid from 1981 until 2000 during the period of
Placid's putative ownership of the pipeline; and (2) assuming
that the pipeline's existence could constitute a continuing tort,
whether the pipeline's continuing existence even after Placid
sold it in 2000 could delay the commencement of prescription as
to Placid as long as the pipeline remained on Plaintiffs' land.

### 1.  Existence of Continuing Tort

The Magistrate Judge formerly addressed both of these issues
in her report and recommendation, which the District Judge
adopted in denying Placid's prior motion for summary judgment.
With respect to the first issue, whether a continuing tort
existed, the Magistrate Judge cited to jurisprudence supporting a
finding that the pipeline's continuing existence meets the
definition of continuing wrongful conduct attributable to Placid

that delayed the commencement of prescription.  <u>See</u> Rec. Doc. 31,
at 29-31.  The Magistrate Judge primarily relied upon <u>Tujaque v.</u>
<u>Atmos Energy Corp.</u>, 442 F. Supp. 2d 321, 323 (E.D. La. 2006).
The report and recommendation, which was adopted by the District
Judge, gave a thorough analysis of <u>Tujaque</u> and the Louisiana
jurisprudence that it relied upon.  The District Judge at the
time, Chief Judge Ralph E. Tyson, approved the report and
recommendation and adopted it as the court's opinion.  Rec. Doc.
33.

In <u>Tujaque</u>, the court held that the defendant breached the
tort duty not to trespass through the placement of a pipeline and
debris upon the plaintiff's property without the plaintiff's
permission, and that the breach continued until those items were
removed.  442 F. Supp. 2d at 325.  Therefore, "[t]he trespass was
a continuing tort and did not cease, and prescription did not
begin to run, until the pipeline and debris were removed from
[the plaintiff's] property."  <u>Id.</u>  The court distinguished the
Louisiana Supreme Court's decision in <u>Crump</u>, 737 So. 2d 720.  It
found the case of <u>Cooper v. Louisiana Department of Public Works</u>,
03-1074 (La. App. 3d Cir. 3/3/04); 870 So. 2d 315, on point.

In <u>Crump</u>, a third party had dug a canal on the defendant's
property, such that the flow of water was diverted from its

original course and a portion of a bayou dried up. As a result, the plaintiff no longer had access to a lake from her property. 737 So. 2d at 722-23. The plaintiff sued in negligence, and the court found that the continued presence of the canal was not a continuing tort. Rather, the digging of the canal was the operating cause of injury, and the continued presence of the canal and consequent diversion of water were simply continuing effects arising from a single tortious act. Id. at 727-28. Furthermore, the Crump court found that the violation of the duty to remove the canal was the violation of a duty to repair damage—not a continuing tort. Id. at 729.

In Cooper, landowners sued the defendant for damages from permanent flooding of their land due to the construction of locks and dams. 870 So. 2d at 319. The court distinguished Crump on the grounds that in Cooper, the continuous action was a constant interference with the landowners' servitudes of drainage. Id. at 323. After citing Cooper, Crump, and a number of other Louisiana cases, the court in Teaque held that the existence of the pipeline and debris on the property there at issue constituted a continuing tort. The Teaque court found that Crump was distinguishable in that it did not involve a trespass on the plaintiff's land, but rather the digging of a canal that caused

"progressively worsening damage." Teague, 442 F. Supp. at 324.

The court found that just as in Cooper, wherein the "presence of

locks and dams interfered with the plaintiffs' servitude of

drainage," so in Teague, there was a continuing tort because of

the continuing existence of the offending object. Teague, 442 F.

Supp. at 324-25. Thus, the court in Teague held that if the

plaintiff filed suit within one year of the pipeline's removal,

his suit was not prescribed. Id. at 325. As previously noted,

the Magistrate Judge's report and recommendation in this case,

which the District Judge accepted, gave a thorough discussion of

Teague and concluded that due to the continued presence of the

offending pipeline on the Plaintiffs' property until 2007, at

which time the offending nature of the pipeline ceased due to

Plaintiffs' grant of a right-of-way to CLEPCO, Plaintiffs'

trespass claim had not been shown to be time-barred. Rec. Doc.

31, at 30.

Placid cites authority contrary to Teague and the Louisiana

case law cited therein. For example, Placid cites Patin v.

Stockstill, 315 So. 2d 868 (La. App. 1st Cir. 1975), in which

landowners sued regarding the placement of a road on their

property for the purpose of hauling dirt. The plaintiff

landowners argued that the placement of the right-of-way across

their property was a continuing offense that delayed the commencement of prescription.  _Id._ at 871.  The court rejected the plaintiffs' argument, finding that "[t]he cause of the injury arose, produced injury and ceased the moment the road was constructed . . . .".  _Id._  The court stated that the "continued existence of the road" on the property did not suspend prescription after knowledge by the owner.  _Id._ at 872.  _Patin_ reveals the importance of how one defines the duty in a trespass claim.  Cases like _Patin_ may be distinguishable from the instant one, to the extent that the alleged trespass is not the mere existence of the pipeline, but that Placid (and subsequently CLEPCO) continuously used, operated, and maintained the offending object.[4]  This alleged continuous activity on Plaintiffs' land constitutes a continuing tort that resulted in successive damages from day to day.  _See_ _Kling Realty Co., Inc. v. Chevron USA, Inc._, 575 F.3d 510, 519 (5th Cir. 2009) ("Thus, the question is

---

[4] Also distinguishable on this basis is _Terrebonne Parish School Board v. Mobil Oil Corp._, 310 F.3d 870 (5th Cir. 2002), in which the defendant dredged a canal to access a well.  The drilling and well-completion operations had been abandoned 42 years prior to the plaintiff's lawsuit, but the plaintiff maintained that the existence of the canal had contributed to erosion of the land.  _Id._ at 873.  The court refused to apply the continuing tort doctrine because "the defendant's conduct ceased decades earlier," in that the completed well had been abandoned with the canal left intact approximately 40 years prior to the filing of suit.  _Id._ at 886.  _Cf._ _Frank C. Minvielle, L.L.C. v. IMC Global Operations, Inc._, 380 F. Supp. 2d 755, 766 (W.D. La. 2004) (continuing tort doctrine inapplicable where the tortious conduct, the disposal of waste onto the plaintiff's property, had abated when the defendant ceased operations).

whether a continuing physical invasion of the property is present."); <u>Hunter v. Tensas Nursing Home</u>, 32,217, p.5 (La. App. 2d Cir. 10/27/99); 743 So. 2d 839, 842 ("Typically, courts have found torts to be continuous in nature where each individual act would not necessarily give rise to a cause of action; but instead, the cumulative effect of regularly-occurring or continuous actions results in successive damages from day to day.").

However, continuous operation of a pipeline is a different theory of trespass from an allegation that the defendant failed to remove it after placing it there. This distinction may be one with a difference to the extent Plaintiffs would argue that the continuing tort was continuous use of the pipeline. Specifically, it is undisputed that subsequent to December 1, 2000, when CLEPCO purchased the pipeline, Placid did not own any interest in or operate any part of the pipeline system or transport any oil through it.[5] Therefore, as to Placid, if the continuous tort of trespass is defined as the continuous use of the pipeline, Placid's relevant conduct ended in 2000, approximately seven years prior to the filing of Plaintiffs'

_____

[5] <u>See</u> Rec. Doc. 60-2, at 3, ¶ 10 (Placid's statement of undisputed facts, claiming that the agreement was effective October 30, 2000); Rec. Doc. 61-2, at 1, ¶ 3 (Plaintiffs agreeing that this is an undisputed fact, with the exception that the sale to CLEPCO was effective December 1, 2000).

lawsuit.  Thus, in order to avoid summary judgment on
prescription, Plaintiffs' theory must be not that the continuing
trespass was Placid's use of the pipeline, but rather its failure
to remove the pipeline, which alleged tort persisted until 2007,
when Plaintiffs granted a right-of-way in favor of CLEPCO.
Placid cites case law rejecting such a theory.  See Boudreaux v.
Terrebonne Parish Police Jury, 422 So. 2d 1209, 1213 (La. App.
1st Cir. 1982) ("The continued existence of a construction
unlawfully placed on land by virtue of a trespass does not
suspend or interrupt this prescriptive period.").[6]  Thus,
Plaintiffs' theory presents a thorny issue.  Federal district
courts interpreting Louisiana law (e.g., in Teague) have found
that the pipeline's continuing existence is sufficient, while at
least some Louisiana courts (e.g., Patin and Boudreaux) have
found this to be insufficient.

In the wake of its decision in Crump and in an apparent
attempt to synthesize and otherwise explain apparently disparate
case law regarding the continuous tort doctrine, the Louisiana
Supreme Court in Hogg v. Chevron USA, Inc., 2009-2632 (La.

---

[6] Boudreaux involved a suit for damages in tort alleging trespass, where
the defendant contracted for the placement of a drainage and reservoir canal
and levee across the plaintiffs' property.  422 So. 2d at 1211-12.  It appears
that the quoted statement was dicta because the referenced prescriptive period
was ultimately held not to apply.  Id. at 1213-14.

7/6/10); 45 So. 3d 991, gave the most recent in-depth treatment to the issue that this Court is aware of. In Hogg, the Court addressed "whether the plaintiffs' claims for damages to their immovable property resulting from the migration of gasoline from formerly leaking underground storage tanks located on neighboring property" were prescribed, and whether a continuing tort was implicated. Id. at 994. The plaintiff landowners in Hogg sued regarding the migration of gasoline from an adjacent lot that was used as a gas service station. Id. at 994-95. In concluding that neither the doctrine of *contra non valentem* nor of continuing tort applied, and therefore that plaintiffs' action was prescribed, the Court thoroughly reviewed Louisiana law regarding continuing torts—specifically, continuing trespasses.

Citing its prior decisions, including Crump, the Louisiana Supreme Court characterized the appropriate inquiry as "a conduct-based one, asking whether the tortfeasor perpetuates the injury through overt, persistent, and ongoing acts." Id. at 1003. In the context of trespass to land, "[w]hen a trespass which permanently changes the physical condition of the land is concluded, no additional causes of action accrue merely because the damage continues to exist or even progressively worsens." Id. The court noted that it was guided by prior jurisprudence,

and then proceeded to review the pertinent case law, giving "particular" attention to the court's prior decision in South Central Bell Telephone Co. v. Texaco, Inc., 418 So. 2d 531 (La. 1982).

In South Central Bell Telephone, the plaintiff had filed suit for damage to underground telephone cables caused by gasoline leaking from storage tanks on nearby properties. In that case, the court found that the operating cause of injury was the leaking underground storage tanks, and that the operating cause abated when the tanks were removed and replaced. South Central Bell Telephone, 418 So. 2d at 533. Following its discussion of South Central Bell Telephone, the Hogg court proceeded to review other Louisiana cases. It noted that in Mouton v. State, 525 So. 2d 1136, 1142 (La. App. 1st Cir. 1988), involving the deposit of toxic and hazardous waste on the landowner's property, the court found that the operating cause of injury was not the *presence* of hazardous waste on the property, but rather the deposit of waste on the land, which having ceased more than one year before suit was filed, meant that the claim was time-barred. The court in Hogg then noted that a similar result obtained in Lejeune Bros., Inc. v. Goodrich Petroleum Co., L.L.C., 2006-1557, p.17 (La. App. 3d Cir. 11/28/07); 981 So. 2d

23, 35, in which the court held that the disposal of waste onto the plaintiff's property was the operating cause of injury.

Consistently with the jurisprudence that the court cited in Hogg, the court held that the operating cause of the injury under the allegations was the leaking storage tanks, rather than the presence of the gasoline in the soil. 45 So. 3d at 1006. The presence of the gasoline was the continuing effect of prior wrongful conduct that had occurred on adjacent property. Accordingly, the court found that the leakage of gasoline did not constitute a continuing tort. Id. However, the court noted in a footnote that the operating cause was the leaking underground storage tank, and that the tortious conduct ceased once the tank was replaced. Id. n.17. Such an analysis suggests that as long as the object through which a defendant commits a trespass to land remains in place, causing continuing injury, the remainder of that object on the land constitutes a continuing trespass.

Although the Louisiana Supreme Court in Hogg faced a more nuanced, toxic tort issue than the question of laying a pipeline, its analysis suggests that the proper inquiry in a continuing trespass context is (1) the identification of the thing through which the defendant is alleged to have trespassed, and (2) whether the defendant leaves that thing in place. In the instant

case, the District Judge's prior ruling, which adopted the
Magistrate Judge's report and recommendation, was not manifestly
erroneous in finding the existence of a continuing trespass due
to Placid's placement of a pipeline on Plaintiffs' property and
leaving it there.  Although there is jurisprudence suggesting
that a trespass does not continue simply because an offending
object remains on property, there is also jurisprudence to the
contrary.  Although the Louisiana Supreme Court has set the
bounds of the appropriate analysis in <u>Crump</u> and <u>Hogg</u>, this Court
is not aware of any Louisiana Supreme Court decision suggesting
that a continuing tort does not exist under the facts of the
present case.  Accordingly, the Court's answer to the first
question is that there was a continuing trespass attributable to
Placid at least during the period of Placid's putative ownership
of the pipeline due to its existence on Plaintiffs' land during
that time period.

## 2.  Post-2000 Tortious Conduct

The second issue is whether the pipeline's continuing
existence even after Placid sold it to CLEPCO in 2000 could delay
the commencement of prescription as to Placid as long as the
pipeline remained on Plaintiffs' land.  Placid's argument is
essentially that the continuous nature of its wrongdoing ceased

in 2000, when it sold the pipeline right-of-way to CLEPCO. The
Magistrate Judge's prior report and recommendation rejected this
argument because Placid cited no jurisprudence in support of this
contention. Rec. Doc. 31, at 31.[7] The revision comments to
Article 3493, which establishes the prescriptive period
applicable to Plaintiffs' trespass claim, state:

> Louisiana decisions draw a distinction between damages
> caused by continuous, and those caused by
> discontinuous, operating causes. When the operating
> cause of the injury is continuous, giving rise to
> successive damages, prescription begins to run from the
> day the damage was completed and the owner acquired, or
> should have acquired, knowledge of the damage. See
> South Central Bell Telephone Co. v. Texaco, 418 So.2d
> 531 (La.1982), and cases cited therein. *When the
> operating cause of the injury is discontinuous, there
> is a multiplicity of causes of action and of
> corresponding prescriptive periods*. Prescription is
> completed as to each injury, and the corresponding
> action is barred, upon the passage of one year from the
> day the owner acquired, or should have acquired,
> knowledge of the damage. See A.N. Yiannopoulos, Predial
> Servitudes, § 63 (1982).

LA. CIV. CODE art. 3493 cmt. c (emphasis added). Therefore, the
crucial issue is whether the pipeline's existence is a continuous
operating cause of the damage alleged. Specifically, did the
transfer of ownership from Placid to CLEPCO constitute the
creation of a new operating cause, such that prescription on the

---

[7] The report and recommendation also cited the cases it had previously
discussed for the proposition that as long as the offending object remains on
immovable property, the trespass continues.

trespass claim against Placid could begin to run as soon as Plaintiffs acquired knowledge of the trespass?

There is Louisiana case law that, broadly read, states that the continuing existence of an offending structure constitutes a continuing tort until the structure is removed, which might suggest that Placid's transfer of ownership of the right-of-way to CLEPCO did not end the continuing nature of Placid's tort of placing the pipeline there. See, e.g., Joseph A. Neyrey, General Contractor, Inc. v. La. Power & Light Co., 347 So. 2d 266, 267 (La. App. 4th Cir. 1977) ("[A] trespass committed by illegally erecting a structure on immovable property continues as long as the offending object remains on the premises, and the trespass is terminated only by the removal of the object wrongfully placed there."); Vial v. S. Cent. Bell Telephone Co., 423 So. 2d 1233, 1236 (La. App. 5th Cir. 1982) (same). However, although these statements of law certainly apply where only one entity or person is responsible for placement of the offending structure on a plaintiff's land, it does not necessarily follow that the tort is a continuing one where Party A initially places the offending structure on land, but then Party B assumes the maintenance of and responsibility for the offending object. In fact, a plain reading of Louisiana case law suggests that the continuing tort

doctrine only applies with respect to the tort liability of the defendant whose conduct is ongoing.  See <u>Crump</u>, 737 So. 2d at 728 ("[F]or there to be a continuing tort there must be a *continuing duty owed* to the plaintiff *and a continuing breach of **that duty by the defendant**.*") (emphasis added).  Thus, the issue may be re-framed as whether the continuing existence of the pipeline, post-transfer to CLEPCO, is fairly attributable to Placid, such that the post-transfer existence of the pipeline is a continuing trespass with respect to Placid.

Placid argues that when it purported to convey the pipeline to CLEPCO, any duty it had to remove the pipeline ended because it no longer owned the pipeline.  However, this argument is not persuasive because it is akin to arguing that an alleged tortfeasor may absolve himself of a duty owed to the alleged victim by contracting with a third party for that third party to assume the duty.  Under general Louisiana principles of obligations, although an obligor may contract with a third party who assumes the obligation, and the obligee may be able to recover from the third party, the obligor still owes the duty.  <u>See</u> LA. CIV. CODE art. 1821 ("An obligor and a third person may agree to an assumption by the latter of an obligation of the former. . . . The unreleased obligor remains solidarily bound

with the third person."). Furthermore, the type of trespass at issue is the erection of a structure upon land, and this definition of trespass does not require that the defendant own the thing used to commit the trespass. See M & A Farms, Ltd. v. Town of Ville Platte, 422 So. 2d 708, 711 (La. App. 3d Cir. 1982) ("A continuing trespass occurs where the defendant erects a structure or places an object upon the land of the plaintiff and fails to remove it."). Although the Court need not, and does not, pass judgment on the merits of the trespass claim, to the extent such a cause of action exists, Placid cannot negate its duty not to trespass by stating that it sold to a third party whatever property rights it had in the operative mechanism of the trespass. Therefore, the Court finds that because Placid had a continuing duty to remove the pipeline it laid on Plaintiffs' land, the failure to remove the pipeline constituted an alleged continuing tort that existed until 2007, when Plaintiffs granted a right-of-way to CLEPCO.[8]

---

[8] The Court need not address the parties' remaining arguments, for example, whether Placid and CLEPCO could be joint tortfeasors, such that CLEPCO's use of the pipeline after Placid's sale to CLEPCO could constitute a continuing tort for which Placid could be responsible. The parties also raise the issue of whether pre-1996 Louisiana tort law could apply, based on pre-1996 maintenance of the pipeline, so as to make CLEPCO and Placid solidary obligors, such that CLEPCO's continued use could extend the prescriptive period as to Placid. The Court need not reach this argument, either.

Notwithstanding the applicability of the doctrine of continuing tort to this case, this leaves unanswered one final potential issue that the parties do not directly address in their supporting memoranda. Granted that the existence of the pipeline on Plaintiffs' property constituted an alleged continuing trespass of Placid, such that the conduct continued until 2007, the Court must address the interaction of the continuing tort doctrine with the applicable prescriptive period. As previously stated, because the trespass claim is a claim for damage to immovable property, "the one year prescription commences to run from the day the owner of the immovable acquired, or should have acquired, knowledge of the damage." LA. CIV. CODE art. 3493. Plaintiffs aver that "[i]n the Fall of 2005, W. Patrick Aertker, Jr. discovered that no valid right-of-way agreement existed for the 8-inch pipeline." Rec. Doc. 1, at 6, ¶ 18. Thus, Plaintiffs knew or should have known of the trespass more than one year prior to the date on which they filed suit.

The comments to article 3493 indicates that "[w]hen the operating cause of the injury is continuous, giving rise to successive damages, prescription begins to run from the day the damage was completed and the owner acquired, or should have acquired, knowledge of the damage." LA. CIV. CODE art. 3493 cmt.

c.  Facially, this statement raises the issue of whether, notwithstanding the continuous conduct, Plaintiffs' trespass claim is prescribed for failure to file suit within one year from when they knew of the *damage*.  However, the comments cite to South Central Bell Telephone, in which the Louisiana Supreme Court stated that although the prescriptive period for damage to adjacent land generally commences when the damage becomes apparent, "[w]hen the damaging conduct continues, prescription runs from the date of the last harmful act."  418 So. 2d at 532. Here, the harmful "act" of Placid's alleged failure to remove the pipeline ended in 2007, when Plaintiffs granted a right-of-way to CLEPCO, which permitted CLEPCO to use such right-of-way for a pipeline.  Therefore, because suit was filed within one year of when the continuing tort ended, Plaintiffs have demonstrated the timeliness of their trespass claim.

For the foregoing reasons, the Court finds that, as the Magistrate Judge previously found and the District Judge agreed, Plaintiffs' trespass claim was timely filed and is not barred by liberative prescription.  The Court need not decide the validity of the trespass claim, but merely looks to the allegations of the complaint, supplemented by material facts beyond genuine dispute. The Louisiana Supreme Court has stated, "Statutes regulating

prescription are strictly construed against prescription and in favor of the obligation sought to be extinguished; thus, of two possible constructions, that which favors maintaining, as opposed to barring, an action should be adopted." <u>Mallett</u>, 939 So. 2d at 1258. Drawing all proper inferences in favor of the non-movant, the Court finds that Placid's motion should be denied.

For the foregoing reasons, **IT IS ORDERED** that Defendants' Motion for Summary Judgment (Rec. Doc. 60) is hereby **DENIED**.

New Orleans, Louisiana, this 15th day of June, 2012.

CARL J. BARBIER
UNITED STATES DISTRICT JUDGE