UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| AERTKER ET AL. | CIVIL ACTION |
| VERSUS | NO: 07-473 |
| PLACID HOLDING COMPANY ET AL. | SECTION: "J" (5) |

## **FINDINGS OF FACT AND CONCLUSIONS OF LAW**

This matter was tried before the Court, sitting without a jury, on June 21, 2012. Having considered the testimony and evidence at trial, the arguments of counsel, and the applicable law, the Court now issues the following findings of fact and conclusions of law in accordance with Federal Rule of Civil Procedure 52(a).

## **PROCEDURAL HISTORY AND BACKGROUND FACTS**

On April 11, 1936, W. Patrick Aertker, the husband of Bessie Brown Aertker, Plaintiffs' ancestors in title, acquired the following property by deed:

All of Section 3, Township 7 North, Range 1 East, LaSalle Parish, Louisiana, less and except the South 1/2 of the Southeast 1/4 thereof (the "Aertker Land").

On December 22, 1948, W. Patrick Aertker leased the timber and wood products on the Aertker Land to Herbert N. Tannehill ("Mr. Tannehill") for a term of ninety-nine years ("Timber Lease"). The Timber Lease granted Mr. Tannehill the right to conduct reforestation operations on the land, to plant and grow trees, to deaden, cut, and remove trees and forest products, and the right to ingress and egress for the purpose of carrying on these operations. The lease did not grant Mr. Tannehill the right to grant servitudes or to engage in any operations unrelated to the timber operations. Moreover, the lease specifically reserved to W. Patrick Aertker the right to any oil, gas, or mineral leases on the property as well as the rights for ingress and egress to inspect the property and, among other things, "lay pipeline."

On September 25, 1972, by *mesne conveyances*, Louisiana-Pacific Corp. ("Louisiana-Pacific") succeeded to the interest of Mr. Tannehill and became "Lessee" of the Aertker Land pursuant to the Timber Lease. On September 16, 1981, Louisiana-Pacific granted Placid Refining Co. ("Placid") a right-of-way, 45 feet in

width and 1.214 miles in length, over the Aertker Land.[1] The right-of-way authorized the construction, maintenance, and removal of an 8-inch wide crude oil pipeline ("Searcy-Boyce Pipeline"). Specifically, the right-of-way was granted over and across Section 3, Township 7 North, Range 1 East, LaSalle and Grant Parish, Louisiana, at Sections 3, 4, 8, & 9, which includes the Aertker Land. The grant of right-of-way was signed by James Eisses ("Mr. Eisses"), General Manager, Louisiana-Pacific. It was granted for a consideration of $640.42 and the payment of the current value of damages which might arise from the exercise of the servitude. The grant of right-of-way did not include any language or documentation stating that Mr. Eisses was expressly authorized to alienate property and/or grant servitudes. However, at the time the right-of-way grant was signed, a Louisiana-Pacific Corporate Resolution granting Mr. Eisses the authority "to consummate any sale or purchase of timber or timberland" was on file in the LaSalle Parish conveyance records. The resolution was dated May 5, 1976.[2] No member of the Aertker family signed and/or was included in the grant of the right-of-way. Likewise, no member of the Aertker Land gave Placid permission to use the

---

[1] It should be noted that in addition to Placid Refining Co., all references herein to "Placid" also include Defendants Placid Holding Co., Placid Pipeline Co. LLC, and Rosewood Refining LLC.

[2] Trial Exhibit 12, p. 111.

right-of-way.

During the preparation for the building of the Searcy-Boyce Pipeline, Placid utilized the services of independent contract landmen to purchase the right-of-way for the line. In particular, Placid's chief landman for the area hired the Bill Beasley Brokerage Service to acquire all of the pipeline right-of-ways. Mr. Beasley died prior to trial. The other contract landmen were not regular employees of Placid, and no records were maintained as to their identity. Additionally, as part of its preparation, Placid budgeted $58,272.00, or $150.00 per rod, for the acquisition and damages costs for the right-of-way which traversed the Aertker Land.[3]

At the time that Placid was acquiring the right-of-way, the Assessor's records for 1980 and 1981 identify the taxpayer for the Aertker Land as Louisiana-Pacific. The records show that Louisiana-Pacific paid taxes pursuant to a ninety-nine year lease. The 1972 Assessor's ownership map for LaSalle Parish (the ownership map at the time that Louisiana-Pacific granted the right-of-way to Placid) shows that the Aertker Land was owned by the Aertker family, and that the land was burdened by a ninety-nine year lease in favor of Louisiana-Pacific.

In March 1982, Placid completed the Searcy-Boyce Pipeline, an

---

[3] Tr. Exh. 23, p. 182; Tr. Exh. 31, p. 223.

8-inch crude oil pipeline approximately 37.4 miles long, running from Placid's crude oil collection and storage facility located in Searcy, LaSalle Parish, Louisiana to Placid's storage facility in Boyce, Rapides Parish, Louisiana. Approximately 1.214 miles of the Searcy-Boyce Pipeline (388.3 rods) traverses the Aertker Land, using a right-of-way 45 feet in width. The portion of the pipeline traversing the Aertker Land also includes a surface facility (e.g. a block valve). The approximate cost of the construction was $7,960,000.

The Searcy-Boyce Pipeline was put into service on March 2, 1982, and it was used by Placid until December 1, 2000, when Placid sold all portions of the Searcy Gathering System (the system which feeds into and includes the Searcy-Boyce Pipeline) to Central Louisiana Energy Pipeline Company (CLEPCO). During the time period in which Placid used the pipeline, Placid used the pipeline exclusively to transport its own oil, which was purchased at the well-head. Placid transported a total of 86,936,658 barrels of crude oil through the Searcy-Boyce Pipeline and, thus, through the Aertker Land. Because the crude oil transported through the Searcy-Boyce Pipeline was owned by Placid and intended for use in Placid's refinery, no charges for use of the gathering system or the 8-inch pipeline were assessed to anyone, no tariff was charged, no profit was allocated, and the

pipeline was treated as an "overhead item" for the refinery. While no profit was allocated to the Searcy-Boyce Pipeline, the total aggregate profit earned by Placid during the time period that it accounted for the pipeline was $148,926,000.[4]

As of March 2, 1982, W.P. Aertker, Jr. and Betty Aertker Harwood, children of W. Patrick Aertker and Bessie Brown Aertker, had acquired the Aertker Land by inheritance. They owned the property in indivision, in the proportions of one-half each. On April 27, 1989, W.P. Aertker, Jr. and Betty Aertker Harwood partitioned the Aertker Land. On February 12, 1996, W.P. Aertker, Jr. conveyed his interest therein to DeNiro, LLC. On April 9, 1996, Betty Aertker Harwood conveyed her interest to Southern Interest, LLC. As a result of the partition and conveyances, Deniro, LLC owns 580 feet of the former Aertker Land crossed by the right-of-way, and Southern Interest, LLC owns 5,835 feet. DeNiro, LLC and Southern Interest, LLC have stipulated that any award in this case should be allocated equally between the two entities.

On October 17, 2002, W.P. Aertker, Jr. inspected the Aertker Land and discovered the existence of the pipeline. Prior to this inspection, no owner of the Aertker Land knew of the pipeline's existence. Upon discovering the pipeline, Mr. Aertker assumed

---

[4] Tr. Exh. 31, p. 229.

that the pipeline right-of-way was granted by his father. In 2005, Mr. Aertker discovered problems with the grant of the right-of-way and was put on notice that no owner of the Aertker Land had granted the right-of-way. In 2006 Plaintiffs filed suit against CLEPCO, the new owner of the Searcy-Boyce Pipeline, contending that Plaintiffs were the owners of the pipeline and seeking to evict CLEPCO. The court ruled in favor of CLEPCO but, thereafter, the Plaintiffs and CLEPCO entered into a compromise agreement, dated May 1, 2007, which included the grant of a conventional servitude of passage to CLEPCO for $30,000.

On October 6, 2007, Plaintiffs filed the instant suit stating that they had a petitory action for accession to immovables or, alternatively, an action for continuing tort. In defense, Placid has asserted that it acquisitively prescribed the right-of-way and/or that Plaintiffs' claims are personal and, therefore, have prescribed under the one-year liberative prescription period afforded to delictual actions. At the time that this action came to trial the following legal questions remained before the Court: (1) Was Placid a good faith or bad faith possessor for the purposes of acquisitive prescription, accession, and/or trespass? (2) What is the proper cause of action in this case? (3) What is the proper standard for measuring damages based upon the relevant cause of action?

## Discussion

**A.  Placid was a Possessor in Bad Faith**

Under Louisiana law, good faith is presumed for the purposes of accession and acquisitive prescription. LA. CIV. CODE arts. 487 cmt.(e), 3481. In matters of accession, "a possessor is in good faith when he possesses by virtue of an act translative of ownership and does not know of its defects." Id. art. 487 cmt.(b). A good faith possessor must do more than merely believe that the original author of his title was the owner. Id. "For purposes of acquisitive prescription, a possessor is in good faith when he reasonably believes, in light of objective considerations, that he is owner of the thing he possesses." Id. art. 3480. While good faith is presumed, it may be rebutted with "proof that the possessor knows, or should know, that he is not owner of the thing he possesses." Id. art. 3481. Generally, "an acquirer of immovable property is not charged with constructive knowledge of the public records, nor is he bound to search the public records;" however, if he "knows sufficient facts to excite inquiry [he] is bound exceptionally to search the public records and is charged with the knowledge that a reasonable person would acquire from the records." Id. art. 3480 cmt.(d) (citations omitted); see also, id. art 3481 cmt.(e) (citing Attaway v. Culpepper, 386 So.2d 674 (La. App. 3 Cir. 1980)). In determining

8

good faith, the court should consider all relevant factors in a case that bear on the likelihood of discovering a defect in title. Phillips v. Parker, 483 So. 2d 972, 977-98 (La. 1986). Such factors include the purchase price as well as defects in the title itself. Id. at 978.

In a prior Report and Recommendation issued by the Magistrate Judge and adopted by the Court, it was determined that Placid had just title[5] to the Aertker right-of-way and that it had possessed the right-of-way for at least ten years. (Rec. Doc. 31, p. 12-14) Therefore, for the purposes of both acquisitive prescription and accession, the only issue before the Court is whether or not Placid was in good faith.

At trial, Plaintiff's expert professional landman, Oliver Leblanc ("Mr. Leblanc"), testified that the assessor's ownership map that predated the 1981 right-of-way agreement showed that Bessie B. Aertker et al. was the owner of the disputed property, and that the property was under a ninety-nine year lease to Louisiana-Pacific.[6] Mr. Leblanc also testified that the 1980 and 1981 tax rolls indicated that the Aertker Land was under a

---

[5] Just title, as it was defined at the time that Placid entered into the right-of-way agreement, was "a title which by its nature, would have been sufficient to transfer the ownership of the property, provided it had been derived from the real owners." Former La. Code Civ. Proc. art. 3485

[6] Trial Transcript, pp. 14-15 (June 21, 2012); Tr. Exh. 28.

9

ninety-nine year lease.[7] Mr. Leblanc testified that a landman exercising the proper standard of care would have checked the records and, thus, would have been alerted to the true ownership of the land upon viewing these documents.[8] Additionally, Placid's expert economist, Kenneth Boudreaux, testified that on average, Placid would have expected to pay $58,272.00 for the "acquisition and damages" cost of the disputed right-of-way, including miscellaneous costs of the acquisition such as landmen.[9] This price is at an estimate of $150.00 per rod.[10] In actuality, Placid paid $640.42 for the right-of-way.[11] The actual price paid was approximately $16.50 per rod (or less).[12] In addition, Plaintiffs have pointed out that the deed to the right-of-way contained no warranty of title, no statement of ownership, and no indication that Mr. Eisses, Louisiana-Pacific's agent, had written authorization to alienate immovable property.[13]

Taken on whole, these factors indicate to the Court that

---

[7] Trial Tr., pp. 16-17; Tr. Exh. 29.

[8] Trial Tr., p. 17.

[9] Trial Tr., p. 166; Tr. Exh. 31, p. 223.

[10] Trial Tr., p. 166; Tr. Exh. 31, p. 223.

[11] Tr. Exh. 13, p. 112.

[12] Trial Tr., p.166.

[13] See Tr. Exh. 13, pp. 112-13.

Placid was in bad faith because it knew, or reasonably should have known, that Louisiana-Pacific was not the owner of the Aertker Land and, therefore, not authorized to grant the right-of-way. To the extent that Placid has argued that it relied on the expertise of its landman, the Court notes that Mr. Leblanc's testimony regarding the relative ease of locating the documents listing the owner of the Aertker Land as well as the standard of care for a landman is particularly detrimental. His testimony indicates that at the very least, the landman should have known "sufficient facts to excite inquiry" into the public records and, thus, "is charged with the knowledge that a reasonable person would acquire from the records." See LA. CIV. CODE art. 3480 cmt.(d). Moreover, because the price for the right of way was well below what Placid had budgeted, that alone should have been enough to put Placid on notice that there was a deficiency with the title.

In addition, the Court also notes that under Louisiana law, "[a] mandatary may establish a predial servitude if he has an express and special power to do so." Id. art. 709. Because Louisiana recognizes the equal dignity rule, such power must be given in writing by the principal to the mandate (agent). See 7 GLEN G. MORRIS ET AL., LA. CIV. L. TREATISE, BUSINESS ORGANIZATIONS § 21.04 (2012) (explaining that under the equal

11

dignity rule, a principal must give an agent written permission to sell immovables); see also, LA. CIV. CODE arts. 708, 2440 (requiring that sale of immovables must be made by authentic act or by act under private signature). Thus, in order to grant Placid a right-of-way, Mr. Eisses, Louisiana-Pacific's agent, would have needed express written permission to do so. The corporate resolution that Placid points to as providing that authority does not expressly state that Mr. Eisses has the authority to grant servitudes, as required by law.[14] Thus, since Placid has argued that it relied on, or could have relied on, the resolution, the Court finds that it reasonably should have known that Mr. Eisses did not have the authority to grant the right-of-way, as it was not expressly provided to him in the resolution. As such, the Court finds that Placid was in bad faith. This finding precludes Placid from acquisitively prescribing the Aertker right-of-way. Additionally, it means that to the extent the doctrine of accession applies, Placid cannot retain the civil fruits produced by the pipeline.

**B.    Plaintiffs Do Not Have a Cause of Action for Accession to Immovables**

Accession to immovable property is a real right that is incident to ownership. LA. CIV. CODE art. 482. Under Louisiana

---

[14] See Tr. Exh. 12, p. 111.

law, actions claiming the ownership of immovable property, or of real rights related to the ownership of immovable property, are classified as petitory actions. LA. CODE CIV. PROC. art. 3651. Petitory actions may be brought for a present claim of ownership, ownership limited to a "period *which has not yet expired*," or "which may be terminated by an event which *has not yet occurred*." Id. art. 3652 (emphasis added).

In the instant case, as the aforementioned facts demonstrate, Plaintiffs are the undisputed current owners of the Aertker Land. Likewise, CLEPCO is the undisputed current owner of the pipeline and the right-of-way in question. Placid has no present ownership interest in the pipeline, right-of-way, or the Aertker Land. Thus, there is no dispute about current ownership in this case.

To this Court's knowledge, Louisiana does not recognize a petitory action, or any other named real cause of action, for past ownership of immovable property, or for real rights related to the ownership of that property. As such, this Court finds that Plaintiffs do not have a cause of action for accession to immovables.

To the extent that it could be argued that Plaintiffs have some sort of innominate real action[15] for accession to

---

[15] Innominate means unnamed. Therefore, an "innominate real action" designates an "unnamed" real cause of action. 2 A.N. YIANNOPOULAS, LOUISIANA CIVIL LAW TREATISE, PROPERTY § 292 (4th ed. 2012)("[A]part from the four nominate

immovables, the Court finds informative the Louisiana Fourth Circuit Court of Appeals' analysis in Boykins v. Boykins, 07-0542, p.5 (La. App. 4 Cir. 4/30/08); 984 So. 2d 181. In Boykins, the court directly addressed the question of the abatement of revindicatory actions for the recovery of movable property.[16] In the context of movable property, the court noted that "the revindicatory action abates when the movable is no longer in the defendant's possession." Id. The court found that in the event of abatement, "a plaintiff may have a personal action for damages or unjust enrichment against the former possessor." Id. Thus, even where a real cause of action exists, the nature of the cause of action may change depending upon the relative relationship of the parties to the property. In the instant case, neither party to this suit is in possession of the right-of-way or the pipeline. Furthermore, neither party professes to currently own the right-of-way or the pipeline. Therefore, this Court finds that any real cause of action available to the Plaintiffs has abated.[17]

---

real actions under the Code of Civil Procedure, numerous innominate actions [exist to protect property interests].").

[16] Id. at 185. Revindicatory actions are actions seeking recognition of ownership or the enforcement of ownership rights. Songbyrd. Inc. v. Bearsville Records. Inc., 104 F.3d 773, 777 (5th Cir. 1997). A petitory action is a revindicatory action for immovable property. Id. A revindicatory action for movable property is also one type of innominate real action. Id.

[17] The Court notes that the essential problem with determining the nature of the cause of action in this case is the order in which Plaintiffs chose to proceed with their suits against CLEPCO and Placid. By choosing to first sue CLEPCO and settle with them for the right-of-way, Plaintiffs essentially divested

14

Notwithstanding that finding, Louisiana does recognize personal causes of action for damages for the infringement of a plaintiff's ownership rights. A.N. YIANNOPOULAS, LOUISIANA CIVIL LAW TREATISE, PROPERTY § 242 (2012) ("[A] main demand for damages on account of the infringement of plaintiff's ownership is a personal action."). Specifically, an action seeking damages for interference with an individual's ownership of immovable property may be styled as an action for trespass. Id. Under the circumstances presented in this case, the Plaintiffs' cause of action is best classified as a trespass.

**C.   Plaintiffs Have a Cause of Action for Continuing Trespass**

Trespass is the "unlawful physical invasion of the property or possession of another." Phillips v. Town of Many, 538 So. 2d 745, 746 (La. App. 3 Cir. 1989) (quoting Patin v. Stockstill, 287 So. 2d 780 (La. App. 1 Cir. 1975)). "A trespasser is one who goes upon the property or possession of another without the other's consent." Britt Builders. Inc. v. Brister, 618 So. 2d 899, 903 (La. Ct. 1 App. 1993) (citations omitted). A continuing trespass occurs where an individual places a permanent structure, such as a pipeline, on another's property, and fails to remove it. See Tujaque v. Atmos Energy Corp., 442 F. Supp. 2d 321, 325

---

themselves of their "real" interest in this subsequent suit against Placid. Ultimately, without any claim of ownership of the right-of-way, all that is left before this Court are Plaintiffs' personal claims for damages against Placid.

(E.D. La. 2006). Likewise, the use of a right-of-way without authority may also be a trespass. Booth v. Madison River Comm.,Inc., 02-0288 (La. App. 1 Cir. 12/3/03); 851 So. 2d 1185, 1187-88.

In the instant case, Placid installed the pipeline on the Plaintiffs' property in 1981, without Plaintiffs' permission. From 1981 to 2000, the pipeline remained in use, on the Plaintiffs' land, without Plaintiffs' permission. Plaintiffs did not grant any party permission to use the pipeline on their land until 2007, when Plaintiffs granted a right-of-way to CLEPCO. Therefore, the Court finds that Placid's installation and subsequent use of the Searcy-Boyce Pipeline on Plaintiffs' land constituted a trespass. Furthermore, the Court incorporates the reasoning included in its June 15, 2012 Order relevant to the existence of a continuing tort, and it finds that Placid's trespass on the Aertker Land constituted a continuing trespass that did not cease until 2007, when Plaintiffs granted CLEPCO a right-of-way. (Rec. Doc. 69, p. 19 - 36)

**D. Plaintiffs are Entitled to the Profit Derived From the Pipeline as Damages**

"[O]ne who unlawfully, and against the will of the owner of the land, exercises thereon rights belonging exclusively to the owner, must account to such owner for all the fruits of his

unlawful exercise of that right." Rosenthal-Brown Fur Co. v. Jones-Frere Fur Co., 110 So. 630, 632 (La. 1926)(citing Gulf Refining Co. v. Hayne, 148 La. 340, 340 (La. 1920)); see also, Corbello et al. v. Iowa Prod. et al., 02-0826 (La. 2/25/03);850 So. 2d 686, 708-09. In such cases, fruits are considered to be the profits "derived from the unlawful exercise of [the] right which belonged exclusively to the [owner]." Rosenthal, 110 So. at 633. The sole factor in determining whether or not the owner receives the profits is the good faith or bad faith of the trespasser and/or possessor. Corbello, 850 So. 2d at 708-09. Even where a possessor is in bad faith, he is still entitled to reimbursement. Rosenthal, 110 So. at 632.

Plaintiffs, as owners of the Aertker Land, held the exclusive right to grant or deny the use of a right-of-way on their land. Notwithstanding that right, Placid entered onto the Aertker Land in 1981 and began illegally using the right-of-way. As such, Placid exercised a right belonging exclusively to the Plaintiffs, and, furthermore, did so in bad faith. Thus, Placid must account to Plaintiffs for the exercise of that right by returning the profits that they derived from their use of the right-of-way, i.e. the portion of the profits obtained from the flow of oil through the pipeline that traversed Plaintiffs' land.

The only actual account of profits produced by Placid during

17

the relevant period is $148,926,000. This is the aggregate profit earned by Placid on all of its operations, as Placid did not report separate profits for the pipeline. From 1980 (the first year that the company began to include the use of the pipeline into its total profit figures) until 2000, the percentage of Placid assets that could be contributed to the Aertker right-of-way varied from 0.232% in 1980 to 0.047% in 2000.[18] Applying those yearly percentages to the yearly profit figure for Placid, the total amount of profit attributable to the Aertker right-of-way for the relevant twenty-year period is $96,145.33.[19] Thus, $96,145.33 is the amount that Placid profited from its exercise of the Plaintiffs' ownership rights and, therefore, it is the amount owed to the Plaintiffs in damages.[20] Additionally, pursuant to Louisiana Revised Statute § 13:4203, Plaintiffs are also owed legal interest, calculated from the date of the judicial demand. Id. § 13:4203.

In regard to the requirement that Placid be reimbursed for its expenditures, the Court notes that Placid sold the pipeline

---

[18] See Tr. Exh. 31, p. 229 (giving a yearly breakdown of the Aertker percentage of Placid assets).

[19] See Tr. Exh. 31, p. 229 (giving the yearly Placid profit on the Aertker Land and the total profit figure).

[20] The Court awards profits from 1980 to 2000 because that is the first year that Placid began accounting for the pipeline as part of its overall profit determination. Thus, the profits derived from Placid's use of the Plaintiffs' land actually began one year prior to that use.

to CLEPCO in 2000. At that time, Placid received full reimbursement for its expenditures on the pipeline. Likewise, the Plaintiffs have also settled with CLEPCO, negotiating at arms-length for the right-of-way and corresponding expense of the pipeline. As such, Plaintiffs owe no reimbursement to Placid and their damage award should not be offset.

Furthermore, the Court also notes that it has used Placid's estimate of profit, rather than the Plaintiffs' estimate, because it found Placid's determination more credible. Dr. Boudreaux's calculation was based on actual profit figures from Placid as well as Placid's actual depreciation tables. In contrast, Plaintiffs' calculation involved a large number of hypothetical rates and pay back periods that are not supported by the record before the Court. While the Court acknowledges the authority submitted by the Plaintiffs regarding the use of hypothetical information, actual profits, when available, provide a more accurate basis for profit determinations and, consequently, are a more credible source.

Accordingly, judgment will be rendered in favor of Plaintiffs W. Patrick Aertker, Jr., Betty Aertker Harwood, DeNiro, LLC., and Southern Interests, LLC, and against Defendants Placid Holding Co., Placid Pipeline Co. LLC, and Rosewood Refining LLC, with interest from the date of the judicial demand and court costs.

New Orleans, Louisiana, this 27th day of September, 2012.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE